## CHARLES E. GARITEE *vs.* WILLIAM A. BOND.

*Infamous Crime—Violation of Federal Statute Relating to Pension Claims—Disqualification of Executor.*

Infamous crimes are those which evince moral turpitude, and those other offenses classified generally as *crimen falsi*, which impress upon their perpetrator such a moral taint that he is held to be unworthy of credit and incompetent to testify.

The mere fact that the violation of a statute is punishable at the discre-

tion of the Court by imprisonment in the penitentiary does not make the offense an infamous crime at law.

The Act of Congress of June 27th, 1890, prohibits any pension agent from receiving a larger sum than ten dollars for prosecuting a pension claim, and directs that the violation of the statute shall be punished by a fine, or by imprisonment at hard labor in the discretion of the Court. *Held*, that the violation of this statute does not involve the degree of moral turpitude requisite at common law to make the transgression an infamous crime.

Code, Art. 93, sec. 51, provides that if a person named as executor in a will shall have been convicted of any crime rendering him infamous according to law, administration may be granted in the same manner as if such person had not been named in the will. *Held*, that a person appointed as executor is not disqualified because he had been convicted of a violation of the Federal statute relating to charges for prosecuting pension claims and sentenced to imprisonment therefor, since that statutory offense is not an infamous crime at common law.

Although the offense of which the party was convicted in a Federal Court may be infamous according to Federal jurisprudence, yet in the Courts of this State that offense will not be regarded as infamous, so as to disqualify the party convicted, the same not being infamous according to the jurisprudence of this State.

Appeal from the Orphans' Court of Baltimore City.

The cause was argued before McSherry, C. J., Boyd, Pearce, Schmucker, Jones and Burke, JJ.

*Thomas C. Ruddell* and *Joseph W. Bristor*, for the appellant.

*W. Ashbie Hawkins* (with whom was *Geo. W. F. McMechen* on the brief), for the appellee.

Schmucker, J., delivered the opinion of the Court.

The appellant was named as executor in the last will of Sophia V. Chambers late of Baltimore City. Upon his application to the Orphans' Court of that city for letters testamentary upon her estate, the appellee, claiming to be the adopted son of the testatrix, filed a petition asking that the letters be refused because appellant had been convicted of, and imprisonment for, an infamous crime and had been disbarred as an attorney by the Supreme Bench of Baltimore City for unprofessional conduct involving moral turpitude.

The appellee answered the petition denying that he had been convicted of any infamous offense, or that he was not a fit and proper person to act as executor and insisting that the matters alleged in the petition would not justify the Court in refusing to grant him letters testamentary. The record contains no evidence touching the appellant's alleged disbarment by the Supreme Bench nor is that allegation adverted to or noticed in the order appealed from, but there does appear in the record a transcript of proceedings from the District Court of the United States for the District of Maryland showing his indictment and conviction for a violation of the Act of Congress approved June 27th, 1890, ch. 634, sec. 4. That Act provides as follows: "No agent, attorney or other person engaged in preparing, presenting or prosecuting any claim under the provisions of this Act, shall directly or indirectly, contract for, demand, receive or retain for such services in preparing, presenting or prosecuting such claim, a sum greater than ten dollars, which sum shall be payable only upon the order of the Commissioner of Pensions by the pension agent making payment of the pension allowed; and any person who shall violate any of the provisions of this section or who shall wrongfully withhold from a pensioner or claimant the whole or any part of a pension or claim allowed or due such person or claimant under this Act shall be deemed guilty of a misdemeanor and upon conviction thereof, shall for each and every offense be fined not exceeding $500 or be imprisoned at hard labor not exceeding two years or both in the discretion of the Court."

The indictment in the District Court charges the appellant with having, in violation of the statute, unlawfully demanded and received from a pensioner for prosecuting his claim for the pension the sum of twelve dollars, which was not paid to him upon the order of the Commissioner of Pensions by the pension agent making payment of the pension. It does not appear from the proceedings whether the traverser charged the pensioner twelve dollars in addition to the ten dollar fee contemplated by the law, but it does appear that the twelve

dollars were collected from the pensioner in violation of the statute.

The Orphans' Court, upon a hearing of the matter thus presented to it, passed the order appealed from on July 12th, 1905, declaring that the appellant "be and he is hereby removed as executor of the will of Sophia V. Chambers, he having been convicted of an infamous crime and that letters testamentary to him be refused." It is conceded that the Orphans' Court in passing this order acted in exercise of power supposed to have been conferred upon it by sec. 51, of Art. 93, of the Code of Public General Laws which provides as follows: "If any person named as executor in a will shall be at the time when administration ought to be granted under the age of eighteen years or of unsound mind, incapable according to law of making a contract or convicted of any crime rendering him infamous according to law, or if any person named as executor shall not be a citizen of the United States, letters testamentary or of administration may be granted in the same manner as if such person had not been named in the will."

Without pausing to consider the propriety of the form of the order appealed from we pass to the discussion of the most important question presented by the record which is whether the offense of which the appellant was convicted in the Federal Court was an infamous one within the meaning of sec. 51 of Art. 93 of the Code.

The authorities differ in their definition of an infamous crime. Some of them rely for that purpose, upon the character of the crime with reference to its degree of moral turpitude while others hold that the true test is the nature of the punishment inflicted for the commission of the offense. The definition has in some instances been made to depend largely upon the connection in which the designation infamous was applied to the offense and the purpose intended to be accomplished by its use. Thus, in construing the provision of the Federal Constitution which prohibits prosecution for "a capital or otherwise infamous crime unless on a presentment or indictment of a grand jury," the Supreme Court of the United

States in the *habeas corpus* case of *ex parte Wilson*, 114 U. S. 422, held that the provision must be considered not merely from the standpoint of the character of the crime but also from the nature of the consequences to the accused if he should be found guilty, and it discharged the prisoner, whose offense was punishable by imprisonment for a term of years at hard labor, because he had been tried and convicted upon a mere information without indictment or presentment by a grand jury. The Court in that case gave to the constitutional provision then under consideration, which was manifestly adopted for the benefit of accused persons, that construction which afforded to the greatest number of such persons the benefit of its operation. That decision was followed by a number of others in the same Court holding that imprisonment in the penitentiary was infamous punishment. *Mackin* v. *U. S.*, 117 U. S. 348, *In re Mills*, 135 U. S. 263; *In re Claasen*, 140 U. S. 200.

But even in Wilson's case it was held that at common law prior to the Declaration of Independence, "It was already established law that the infamy which disqualified a convict to be a witness depended upon the character of his crime and not upon the nature of his punishment."

The authorities generally, though not with entire uniformity, hold that the infamous nature of a crime was determined at common law by the character of the act itself and not by the penalty inflicted for its commission. The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi*, which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice. *Rex* v. *Ford*, 2 Salk. 690; *Bouvier Law Dic.*, 1027; 1 *Greenleaf on Evi.*, sec. 373; *Wharton's Criminal Law*, sec. 758; *Bishop's Crim. Law*, sec. 974; *Utley* v. *Merrick*, 52 Mass. 302; 12 *Cyc.*, 135; 16 *A. & E. Encyc.*, p. 247, and cases there cited. *In re Butler*, 84 Me. 25; *State* v. *Nolan*, 15 R. I. 529. Our predecessors had oc-

casion in this case of *State* v. *Bixler*, 62 Md. 360, to determine what constituted an infamous crime within the meaning of sec. 2 of Art. 1 of the Constitution of this State which prohibits from voting at any election a person "convicted of larceny or other infamous crime unless pardoned by the Governor." It is said in the opinion in that case, "An 'infamous crime' is such a crime as involved moral turpitude, or such as rendered the offender incompetent as a witness in Court, upon the theory that a person would not commit so heinous a crime unless he was so depraved as to be unworthy of credit. 1 *Abbott's Law Dic.*, 602, and authorities there cited. The general Court of this State in *Evans* v. *Bonner*, 2 H. & McH. 378, defined infamous crime to be one which rises at least 'to the grade of felony.' This is, however, too narrow, for perjury is a misdemeanor, but by all authority is 'infamous.' The Constitution in providing for exclusion from suffrage of persons whose character was too bad to be permitted to vote could only have intended by the language used such crimes as were infamous at common law, and are described as such in common law authorities * * * There are many misdemeanors punishable by confinement in the penitentiary which are clearly not infamous crimes within the meaning of the common law or of the Constitution. If for example the prisoner had been convicted of any of the assaults with intent mentioned and punished by the Code, and had been sentenced to the penitentiary and served his time out there; without being pardoned by the Governor he would not be chargeable with having committed an 'infamous crime.' "

Construing therefore as we should the expression "infamous crime," used in sec. 51 of Art. 93 of the Code, in the same manner that our predecessors construed it when used in the Constitution, we are compelled to hold that the statutory offense of which the appellant was convicted cannot be regarded by us an infamous one merely because it was punishable at the discretion of the Court by a term of imprisonment which that Court might, in the exercise of its recognized power, have required him to serve in a penitentiary. Nor do we

think that the statutory offense, of which the appellant was convicted, of making an overcharge for services in prosecuting a claim for a pension, and collecting the fee so charged without complying with the provisions of the statute, involved the degree of moral turpitude which would have been requisite to make his transgression an infamous crime at common law.

Even if we assume that in the contemplation of the Federal jurisdiction in which the appellant was tried and convicted his offense would be regarded from the nature of its punishment as an infamous one, that jurisdiction must be considered *quoad hoc* as foreign to that of the Maryland Courts. *Logan* v. *U. S.*, 144 U. S. 303; *Langdon* v. *Evans*, 3 Mackey (D. C.), 1. In Logan's case, the Supreme Court held that both "at common law and on general principles of jurisprudence when not controlled by express statute giving effect within the State which enacts it to a conviction and sentence in another State, such conviction and sentence can have no effect by way of disqualification of a witness beyond the limits of the State in which the judgment is rendered." See to same effect *Com.* v. *Green*, 17 Mass. 515; *Nat. Trust Co.* v. *Gleason*, 77 N. Y. 400; *Story on Conflict of Law*, sec. 92.

The Orphans' Court was therefore in error in treating the appellant as disqualified to fill the office of executor because he had been convicted and sentenced by the District Court of the United States for the offense mentioned in the record, and for that error the order appealed from must be reversed, and the case remanded for further proceedings in accordance with this opinion.

*Order reversed with costs, and cause*
*remanded for further proceedings.*

(Decided December 7th, 1905.)