SUZANNE WALKER WRIGHT *v.* GEORGE AINSLIE NUGENT, Personal Representative of the Estate of Aldace Freeman Walker

[No. 413, September Term, 1974.]

*Decided November 15, 1974.*

The cause was argued before ORTH, C. J., and POWERS and DAVIDSON, JJ.

*William H. Price, II* and *W. N. Harrell Smith*, with whom was *Gene Perry Bond* on the brief, for appellant.

*John W. Sause, Jr.*, with whom were *Walter W. Clagett, Sidney S. Campen* and *W. Ben Wilson* on the brief, for appellee.

ORTH, C. J., delivered the opinion of the Court.

## CASE SUMMARY

This case comes to the Court of Special Appeals of Maryland directly from the Orphans' Court for Talbot County (Orphans' Court). Courts Art., § 12-501. Suzanne Walker Wright, appellant, the only child of Aldace Freeman Walker, deceased, noted an appeal on 8 May 1974 from an order of the Orphans' Court issued 9 April 1974 in a proceeding entitled "Estate of Aldace Freeman Walker", docketed as Estate No. 10850.[1] The order read:

"The above matter coming on for hearing on the objections of Suzanne Walker Wright to the jurisdiction of this Court in the above matter and counsel for Suzanne Walker Wright, Elizabeth Irwin Hazard and George Ainslie Nugent having been heard, it is this 9th day of April 1974, by the Orphans' Court for Talbot County

ADJUDGED and ORDERED as follows:

1. The largest part in value of decedent's estate was located in Talbot County at the time of his death, as appears on the Inventory filed herein.[2] It is therefore determined that this Court has

---

1. The appeal was noted on behalf of appellant ". . . from all judgments and orders and denials of petitions in this case including the Order of this Court entered April 9, 1974, copy of which April 9, 1974 Order is attached hereto and including the two petitions of Suzanne Walker Wright filed April 24, 1974, being the petition for revocation of letters of administration and appointment of George Ainslie Nugent and being the petition for revocation of order of April 9, 1974 transferring issues to the Circuit Court, which were denied on May 7, 1974, copies of which are attached hereto." Although the proceedings formicate with petitions and motions, appellant declares in her brief that ". . . the Order of April 9, 1974 is the only order filed in the estate proceedings from which the appeal is taken." It seems that as to the other matters no orders were entered, or judgments rendered were interlocutory, or the appeal was not timely, or the appeal was abandoned.

We consider the order of 9 April to be a final judgment within the contemplation of Courts Art., § 12-501. See *infra*, SUPPLEMENTAL ISSUE.

2. The inventory listed assets located in Talbot County as real property appraised at $460,000 and tangible personal property valued at $2,415.

jurisdiction to grant probate to any Will of the decedent, whether or not decedent was domiciled in Talbot County at the time of his death, in accordance with the Estates and Trusts Article, Annotated Code of Maryland including Sections 4-104 and 5-103 (A) and (B).

2. The pendency of proceedings in the United States District Court for District of Columbia does not affect the jurisdiction of this Court, the issue in the District being whether the holographic Will should be accepted for probate under the law of the District of Columbia, and the issue in this Court is whether the Will should be accepted for probate under the law of the State of Maryland.

3. Issues filed herein on March 4, 1974 by George Ainslie Nugent and on March 5, 1974 by Elizabeth Irwin Hazard, are hereby sent to the Circuit Court for Talbot County for determination in accordance with Estates and Trusts Article, Section 2-105."

We affirm parts (1) and (2) of the order. Part (3) is not before us, having been superseded by a subsequent order of the Orphans' Court.[3]

## FACTS

On 24 July 1973 the Register of Wills for Talbot County granted the will of Aldace Freeman Walker to probate under

---

**3.** On 24 April 1974 appellant filed a motion to revoke that part of the order of 9 April directing that issues be transmitted to the Circuit Court for Talbot County. On 7 May the Orphans' Court ordered "That since additional issues have been filed by Caveator, Suzanne Walker Wright, and that since additional issues may be filed by other interested parties, that all interested parties are hereby given a period of time up to the 21 day of May, 1974, to file issues in this case, and That a hearing is set before this Honorable Court on the 28 day of May, 1974, for a determination of the question of all issues to be sent to the Circuit Court including the possible revocation or modification of the Order of this Court of April 9, 1974." It thereupon published a notice "To the Attorneys Representing All Interest Persons" requesting that they meet prior to 21 May 1974 "... to frame all the issues they desire to present to this Court on 21 May, as this Court wishes to make a determination of the question of all issues on May 28, 1974, to be transmitted to the Circuit Court for Talbot County without further delay." Apparently action on the issues is abiding this appeal.

administrative probate proceedings and appointed George Ainslie Nugent personal representative of the estate. Estates & Trusts Art., §§ 5-301, 5-302, 5-303.[4] The Administrative Probate Order was predicated upon a request for probate contained in a petition filed by Nugent. The petition showed that Walker, domiciled in the District of Columbia, died on 2 May 1973 at Arlington, Virginia, with a will dated 8 April 1973, appointing Nugent as executor. The will was holographic, written on a sheet from a yellow legal pad, and read as follows:

> "5236 Macomb Street, N.W.
> "Washington, D.C.
> "Sunday — April 8th, 1973
>
> "I, Aldace Freeman Walker, being of sound and disposing mind and memory, do declare this to be my Last Will and Testament.
>
> "I desire and direct upon my death, that all my property, personal and real, of which I might die possessed be placed in a TRUST, the income of which is to be placed at the disposal of Elizabeth Irwin Hazard during the course of her natural life and that upon her death that the corpus of said TRUST be made payable to my grandson, Andrew Wright, or in the event of his demise to be made payable to my daughter, Suzanne Walker Wright.
>
> "I appoint George Ainslie Nugent to be the Executor of my Estate to serve without bond."
>
> "Aldace Freeman Walker"

Appended to the Petition was the affidavit of an attorney at law, admitted to practice before all the courts of the Commonwealth of Virginia. He asserted: "Under the laws of the Commonwealth of Virginia a will written wholly in the handwriting of the testator and signed by him is a valid will.

---

4. References are to the codification of Acts 1974, ch. 11, which revised Art. 93. Although not effective until 1 July 1974, the revision for the main part made changes only in style and language and will be so considered unless otherwise noted.

Also there is no requirement under Virginia law that a will bear a seal. Accordingly, if the will is written wholly in the handwriting of Aldace Freeman Walker and was executed by him in the Commonwealth of Virginia, it is my opinion that such a will is a validly executed will under the laws of the Commonwealth of Virginia."

There was also attached to the Petition the affidavit of Nugent, which, after discussing his friendship with Walker, Walker's relationship with Mrs. Hazard and Walker's state of health, recounted the circumstances of the execution of the will:

"Mr. Walker had been giving serious thought and study to making a new testamentary disposition of his property and had concluded that the most acceptable solution for the purposes he had in mind would be a will leaving his property in trust, with the income to go to his friend Mrs. Hazard during her lifetime, and upon her death, the corpus to his grandson, Andrew Wright, the son of his daughter Suzanne Wright. The trust which Mr. Walker had in mind was quite a complicated one and would have taken considerable time to properly draft in order to take care of his detailed wishes. Accordingly, while in my apartment on Sunday evening, April 8, 1973, he decided out of an abundance of caution, to execute a will which would express his wishes on a stop gap basis. Before he came North on this particular visit, he had purchased and brought with him two books on trusts and wills entitled 'Who Will Get Your Money' by John Barnes (William Morrow & Co., Inc. 1972) and 'Your Will And What To Do About It' by Samuel G. Kling (Wilshire Book Company, 1972). He sat down at my dining room table and I watched him as he wrote out the holographic will. Mr. Walker signed the will which he had written in my presence without any witness attesting in writing to his signature."

See Estates & Trusts Art., § 4-104. The affidavit stated that the will was left by Walker in Nugent's care and, although Walker told Nugent several times that "he would come back and get the document so that it could be put in better shape", Walker died before so doing. Insofar as Nugent knew, Walker never executed any other will subsequent to 8 April 1973. The Petition discussed other proceedings regarding the decedent's estate:

"The decedent had two bank accounts in the District of Columbia at the time of his death; a savings account containing $5,759.95, and a checking account containing $1,106.33. The decedent had executed a prior will dated July 12, 1960; and this prior will, together with a copy of the holographic will dated April 8, 1973, have been filed with the Register of Wills in the District of Columbia. The decedent's daughter (Suzanne Walker Wright) has filed a complaint praying that neither of these wills be admitted to probate in the District of Columbia. In view of the provisions set forth in Article 93, Section 4-104 and Section 5-103 (a), it was deemed that the facts as to the execution of the will and the bulk of the estate of the decedent at the time of his death indicated Talbot County, Maryland was the proper jurisdiction for the probate of the Last Will and Testament of the decedent, dated April 8, 1973." [5]

Nugent duly qualified as personal representative.

5. An affidavit of the Register of Wills, Superior Court of the District of Columbia, included in the record before us, states that a copy of the 1973 writing was filed with him. He informed counsel that he did not consider it to be a will for want of valid execution, as it was not attested and subscribed in the presence of the testator by at least two credible witnesses. "No Petition for Probate of the 1973 writing has ever been filed with this Court, nor would it be accepted for filing as a will since the 1973 writing is, under the law of this jurisdiction, not a will." There was also filed with him a 1960 writing "apparently a carbon copy of a handwritten will, which carbon copy is signed and witnessed in ink." The original of the 1960 writing, according to the Register, was not filed in the District of Columbia court.

On 17 January 1974 Suzanne Walker Wright, individually, and as natural guardian for her infant son, Andrew Wright, filed a petition for the removal of Nugent as personal representative and, on the same date, also filed a petition for judicial probate and a caveat, alleging the incompetence of the testator and undue influence exercised upon him.[6] Estates & Trusts Art., §§ 5-401 and 5-207. This petition further alleged that the Orphans' Court "has no jurisdiction to entertain original probate of either the July 12, 1960 executed carbon copy, the April 8, 1973 unwitnessed writing, or any other writing made by Aldace Freeman Walker that may be discovered." The Orphans' Court conducted a plenary hearing on 6 March 1974 and on 9 April issued the order from which this appeal was taken.

On 24 April 1974 Suzanne Walker Wright filed another petition for the revocation of the letters of administration and appointment of George Ainslie Nugent. The docket entries of the Orphans' Court show under date of 3 May 1974 that the petition for revocation of letters of administration and appointment of Nugent was denied.

## ISSUES

The basic question in this case concerns the jurisdiction of the Orphans' Court to admit to original probate a will executed in Virginia by a person domiciled in the District of Columbia who died in Virginia owning property in Maryland. As we see it, the only issue properly before us is whether the Orphans' Court has jurisdiction to grant judicial probate to the paper writing of 8 April 1973. If it did, then, collateral to the issue is whether the Court was obliged to defer to proceedings in the District of Columbia.

The law is that any action taken after administrative probate shall be final and binding as to all interested persons unless a request for judicial probate has been filed within 6 months of administrative probate. Estates & Trusts

---

6. Thelma P. Walker, surviving spouse of the decedent, renounced all provisions in the will and elected to take her intestate share of the estate.

Art., § 5-304 (a). Section 5-402 (a) declares that a proceeding for judicial probate is mandatory when so requested by an interested person. Here appellant, as an interested person, made timely request for judicial probate. On 5 February 1974 the Register of Wills gave notice as prescribed by § 5-403 to all persons interested in the estate that "A Petition has been filed in this Court by Suzanne Walker Wright, individually and Suzanne Walker Wright, natural guardian of Andrew Wright, minor,[7] for judicial probate, including the appointment of a personal representative for said estate; and that said Petition will be heard at 1:00 P.M. on the 6th day of March 1974, or at such subsequent time or other place to which said hearing may be adjourned or transferred."

As far as we can determine from the transcript of the hearing held on 6 March 1974 it was not a hearing for judicial probate despite the notice. See Estates & Trusts Art., § 5-404. Both the attorney for Nugent and the attorney for Elizabeth Irwin Hazard wondered about the purpose of the hearing. At one point Nugent's attorney asked: "Could the Court instruct me as to exactly what it is that we are doing here. . . . I am really at sea as to what we are doing . . . . Now I haven't the vaguest idea of what the purpose is in taking the testimony [of Suzanne Walker Wright], but if the Court would tell me, I will know how to proceed." The attorney for Hazard prefaced remarks to the Court by noting, "Inasmuch as I am not entirely sure as to what this proceeding is all about. . . ." The transcript does not reflect a clear answer by the Orphans' Court but it is quite apparent from the order issued as a result of the hearing that the Court considered the hearing to be ". . . on the objections of Suzanne Walker Wright to the jurisdiction of this Court . . ." in the matter of the estate. Patently the order did not encompass the appointment of a personal representative nor

---

7. Andrew Wright is Suzanne Walker Wright's only child and is referred to in the will as "my grandson." On 7 February 1974 Nugent filed a petition for the appointment of a guardian *ad litem* for the minor. On 16 April 1974 the Orphans' Court by its order appointed W. Ben Wilson guardian *ad litem* for Andrew Wright and dismissed "All pleadings, papers and documents heretofore filed in this proceeding by Suzanne Walker Wright acting as Guardian, next friend or in any other capacity for or on behalf of the infant . . . ."

did it expressly revoke, modify or confirm action taken at the administrative probate. Estates & Trusts Art., § 5-404 (a). We conclude that a judicial probate proceeding remains to be conducted, followed by appropriate determinations, appointments and orders. From the manner in which the hearing was conducted and the order issued pursuant to it, we are in accord with the view of the purpose of the hearing as suggested by Nugent's attorney to the Orphans' Court at the hearing: "The only question at this point before this Court is whether this Court has jurisdiction of the estate of Mr. Walker, and that is all." We consider the hearing in that light. As so viewed, the sole issue before us is the propriety of the determination below that the Orphans' Court had jurisdiction over Walker's estate.

Appellant contends that the Orphans' Court did not have ". . . jurisdiction or statutory power to grant original probate to the writing of a person domiciled outside of Maryland at the time of his death unless that person originally was domiciled in Maryland." Appellee asserts that the Orphans' Court had jurisdiction over the estate of Walker. The resolution of these divergent claims is to be found in Code, Art. 93, § 4-104, concerned with the execution of a will, and § 5-103, dealing with venue of the probate of a will. Whether appellant or appellee is right depends upon the meaning of these statutes.

*The Execution Statute — Art. 93, § 4-104*

Under the early law, a will was eligible for probate only if it was executed in accordance with the law of the court to which it was offered and no personal representative had authority over the assets located outside of the territorial jurisdiction of the court appointing him. The *lex loci rei sitae* governed the formal execution and validity of wills of real estate. *Lindsay v. Wilson,* 103 Md. 252, 265. The early law of Maryland, Acts 1798, ch. 101, required that wills devising real property be in writing, signed by the party or someone in his presence and by his express direction, and be attested and subscribed in the presence of the devisor by three or four credible witnesses. See Code, 1860, Art. 93, § 301.

Wills bequeathing personal property were not required
to be witnessed. Acts 1884, ch. 293 changed the law. By that
Act both wills devising real property and wills bequeathing
personal property "were utterly void and of none effect"
unless in writing, signed by the testator or by some other
person for him, in his presence and by his express direction,
and attested and subscribed in the testator's presence by two
or more credible witnesses. This is the law today. Estates &
Trusts Art., § 4-102. The same Act of 1884 also passed § 307
providing that "Every will and other testamentary
instrument made out of this state by a citizen thereof shall
be held to be valid, if the same be made according to the
forms required by the law of the place where the same was
made, or by the law of the place where such person was re-
siding when the same was made, and the said will,
when so executed, shall be admitted to probate in any
Orphans' Court of this State." The statute thus altered
the prior rule. Acts 1888, ch. 544 struck out the phrase
"by a citizen thereof." Acts 1894, ch. 151 substituted
domicile for residence with respect to the validity of the
will and added a provision with respect to the probate
of a foreign will. The statute was repealed and re-
enacted with no substantive change by Acts 1914, ch. 238.
For seventy-five years, until 1970, the law was substan-
tially as it ultimately appeared in the Code of 1957 as Art.
93, § 368:

> "Every will or other testamentary instrument
> executed without this State in the mode prescribed
> by law, either of the place where executed or of the
> testator's domicile, or according to the forms
> required by the law of this State shall be deemed to
> be legally executed, and shall be of the same force
> and effect as if executed in the mode prescribed by
> the law of this State, provided, said last will and
> testament is in writing and subscribed by the
> testator; and if the testator was originally
> domiciled in Maryland, although at the time of
> making the will or at the time of his death he may

be domiciled elsewhere, the said last will or testamentary instrument so executed shall be admitted to probate in any orphans' court of this State; and when so admitted shall be governed by and construed and interpreted according to the law of Maryland, without regard to the lex domicilii, unless the testator shall expressly declare a contrary intention in said will or testamentary instrument."

The statute may be divided into two parts. The first part declared wills executed outside of Maryland to be valid if in accordance with the law of (1) the place where executed, or (2) the testator's domicile, or (3) Maryland. The second part provided that a will valid under one of the tests specified in the first part, and made by a person "originally domiciled in Maryland", shall be admitted to probate in Maryland, and, unless the testator expressly declared to the contrary, shall be construed according to Maryland law.

Acts 1969, ch. 3, § 1 repealed most of Code, Art. 93, "Testamentary Law" and re-enacted the Article under the title "Decedents' Estates", effective 1 January 1970. Section 4-104, concerning the execution of wills made outside of Maryland, provided:

"A will executed outside this State shall be deemed to be properly executed if it is (i) in writing, (ii) signed by the testator, and (iii) executed in conformity with the provisions of § 4-102, or the law of the testator's domicile, or the place where the will is executed." [8]

8. Section 4-102, "Execution — Writing; signature; attestation", § 4-103, "Same — Holographic will", and § 4-104, "Same — Will made outside Maryland" are under Subtitle IV — "Wills", Part I — "Execution; Revocation; Revival".

Section 4-102 read: "Except as provided in §§ 4-103 and 4-104, every will shall be (i) in writing, (ii) signed by the testator, or by some other person for him, in his presence and by his express direction, and (iii) attested and signed by two or more credible witnesses in the presence of the testator."

Section 4-103 made valid a holographic will of a testator who is serving in the armed forces of the United States if signed by him and made at a place other than any of the states of the United States or the District of

Art. 93 was again revised by Acts 1974, ch. 11, effective 1 July 1974. Former Art. 93, § 4-104 appeared as Estates & Trusts, Art., § 4-104 with only stylistic changes.[9]

When Art. 93 was revised in 1969, the Act was based upon the statutory proposal made by the Governor's Commission to Review and Revise the Testamentary Law of Maryland. The proposal was set out, with comments, in the Commission's Second Report, published in December 1968 and the Comments were revised by the Commission as was necessary in the light of changes made during the passage of the law. The Comment to § 4-104 begins: "This Section is in accord with former § 368, and no substantive change is intended except that the description of the act of the testator has been changed from 'subscribed' to 'signed' in order to be consistent with Section 4-102." It is true that in enacting § 4-104 no substantive change was made with respect to the first part of former § 368, but the second part of the section was completely eliminated. The provisions concerning the probate and the construction of a will of a testator "originally domiciled in Maryland" simply disappeared from the law. The eliminated part was not resurrected in the 1974 revision. The Revisor noted, "A slight change is made in style." This is, of course, correct when the new section is compared with former § 4-104 of Art. 93, but that part of old § 368 relating to probate of a will of a testator "originally domiciled in Maryland" did not reappear. In the Estates & Trusts Article, however, the Comment to former Art. 93, § 4-104 was repeated with respect to the new § 4-104.

---

Columbia. Such will is void after one year from discharge unless the testator had died prior to the expiration of the year or did not then possess testamentary capacity.

**9.** Estates & Trusts Art., § 4-104 reads:

"A will executed outside this state is properly executed if it is:

    (1) In writing;
    (2) Signed by the testator; and
    (3) Executed in conformity with the provisions of § 4-102, or the law of the domicile of the testator, or the place where the will is executed."

350

*The Venue Statute — Art. 93, § 5-103*

Acts 1862, ch. 155 provided: "Any Will or Codicil may be proved in a county or city, wherein letters testamentary or of administration may be granted." As codified in Art. 93, § 356 (1939) it became "Any will or codicil may be proved in any county or Baltimore City wherein letters testamentary or of administration may be granted." It remained the law until 1949 when Acts 1949, ch. 506 amended it, making clear that wills of both residents and non-residents of the State could be so proved and adding a clause pertaining to pending probate proceedings at the domicile. It appeared as § 374 of Art. 93 in the 1957 Code:

> "Any will or codicil of a resident or non-resident of this State may be proved in any county or Baltimore City wherein letters testamentary or of administration may be granted; but the court, if notified that proceedings for probate at the domicile are pending, may, in its discretion, postpone action upon the application for the original probate of a will or codicil of a decedent not domiciled in the State of Maryland at the time of his death until the court at the domicile has acted."

Section 18 of Art. 93 spelled out where letters of administration may be granted:

> "Whenever any person shall die intestate, leaving in this State personal estate, letters of administration may forthwith be granted by the orphans' court of the county wherein was the party's mansion house or residence; or in case he had no mansion or residence within the State, letters shall be granted in the county where the party died; and in case the party neither had mansion or residence nor died within this State, letters may be granted in the county wherein lies or is supposed to lie a considerable part of the party's personal estate."

The revision in 1969 patterned a new § 5-103 generally after §§ 18 and 374:

"(a) *Proper county.* — The venue for administrative or judicial probate shall be in the county in which the decedent had his domicile at the time of his death, or, if the decedent was not domiciled in Maryland, the county in which the petitioner believes that the largest part in value of the decedent's property in Maryland was located at the time of his death.

(b) *Situs.* — For the purpose of determining venue for the administration of the estate of a decedent who was not domiciled in Maryland at the time of his death, the situs of tangible personal property is its location. The situs of intangible personal property is the location of the instrument, if any, evidencing a debt, obligation, stock or chose in action, or if there is no such instrument, the residence of the debtor. The situs of an interest in property held in trust is located in any county where the trustee may be sued.

(c) *Proceedings in more than one county.* — Probate proceedings concerning a decedent shall not be maintained in more than one county. If such a proceeding is commenced in more than one county, the court of the county where first filed shall have exclusive jurisdiction to determine venue. If proper venue is finally determined to be in another county, the proceeding, including any will, petitions or other papers filed therein, shall be transferred to the proper court."

The Comment to the section observed:

"However, the venue of proceedings will. be relatively more fixed than under the prior- Maryland law, which permitted the conduct of proceedings in the case of a non-domiciliary of · Maryland in· any county where a substantial portion of the

decedent's Maryland property was located. However, in order to avoid undesirable jurisdictional disputes the new statute makes determinative the *bona fide* belief of the petitioner, at the time of filing the petition, as to the County in which the largest part in value of the decedent's property was located at the time of his death. The statute eliminates the provision of the prior law whereby the County in which death occurred is on that account alone necessarily a County of proper venue."

The Comment also discussed the intention of subsections (a) and (b):

"Subsection (a) is not intended to require proceedings to be conducted in Maryland where the decedent was not domiciled in Maryland. If the decedent is not domiciled in Maryland and if it is decided by the petitioners to have the primary proceeding conducted in Maryland, subsection (b) is intended merely to determine the proper county in which the proceeding shall be conducted."

The 1974 revision made only minor changes in style and language.

## DECISION

We have no difficulty whatsoever with the meaning of the statutes applicable to the matter before us. Under the Estates & Trusts Art., § 4-104, a will executed outside Maryland is properly executed if it is in writing and signed by the testator and executed in conformity with the Maryland law or the law of the domicile of the testator, or the law of the place where it was executed. Because a will is ineffective to transfer property in Maryland unless it is admitted to administrative or judicial probate, or recorded pursuant to law, Estates & Trusts Art., § 5-102 (a), we believe it implicit that when the situs of property of a decedent is in Maryland his properly executed will may be

admitted to probate in Maryland. So Estates and Trusts Art., § 5-103 declares where in Maryland such a will may be probated when the decedent was not domiciled in Maryland at the time of his death, namely, the county in which the person petitioning for probate believes the largest part in value of the property of the decedent in Maryland was located at the time of his death. Therefore, because Walker died seised of real property located in Talbot County, and since Nugent, the petitioner for probate, believed that such property represented the largest part in value of Walker's property located in Maryland, the paper writing of 8 April 1973 could properly be admitted to administrative probate by the Register of Wills for Talbot County or to judicial probate by the Orphans' Court for Talbot County with jurisdiction by that Court over the estate, if the writing was signed by Walker and otherwise properly executed. This is all the appeal before us requires us to decide as the primary issue. Whether the writing was in fact signed by Walker, where it was executed, whether it was executed in conformity with the law of its place of execution or of Walker's domicile, wherever that domicile may have been at the time of his death,[10] and Walker's testamentary capacity, are matters yet to be determined by appropriate proceedings below. What we have determined is that the Orphans' Court has jurisdiction to entertain a request for judicial probate, and has authority to take such steps as are necessary to determine whether the writing should be admitted to probate as Walker's last will. Possessed of this jurisdiction and authority, it is not obliged to abide proceedings brought elsewhere. In any event, what the record here shows is that the 1973 writing was not admitted to probate in the District of Columbia.

We have recounted the history of the applicable statutes in the light of the arguments made to us. We believe it clear, however, that no matter what the former law was, the controlling law is not now concerned whether the decedent

---

10. Patently it was not executed in conformity with Estates & Trusts Art., § 4-102.

was "originally domiciled in Maryland" or not. The meaning of "originally domiciled" is not now relevant. Whether the amendment to the venue statute in 1949 implicitly amended the execution statute even though the latter was not changed until 1969, makes no difference. We flatly reject appellant's argument that because the Commission commented that the 1969 revision was in accord with former § 368 and no substantive change was intended, that a will of a non-resident may be probated in Maryland only if he were "originally domiciled" here. If the law under § 368 was that a will of a non-resident could not be admitted to probate in Maryland, then there was a substantive change in the 1969 revision, even if the Commission did not so intend. But it had been held even when § 368 was in effect that an orphans' court had jurisdiction apart from that statute, to accept wills of non-residents for original probate. Niles, J. so held in an erudite and comprehensive opinion in *In re Will of Pritchard*, Superior Court of Baltimore City, Baltimore Daily Record, 26 November 1940. That conclusion seemed to Judge Niles, for reasons he fully explained, "to be not only in accordance with the words of the statutes, and with the general law, but also to be in accord with the intent of the law, namely, to give effect to the intentions, with respect to property in Maryland, of testators who execute wills in other jurisdictions." See Note, 5 Md.L.R. 213; Note, 4 Md.L.R. 400, Annot. 20 A.L.R.3d 1033; Annot. 131 A.L.R. 1023. *See also Hall, Admx. v. Morris*, 213 Md. 396; *Smith v. Mercantile Trust Co.*, 199 Md. 264; *Roach v. Jurchak*, 182 Md. 646. *Contra, Lindsay v. Wilson, supra.* Of course, if Judge Niles was correct in his view of the law, the Comment of the Commission was sound; the elimination of the second part of § 368 would make no substantive change in the law.

Appellant presents two other contentions on appeal. First, she complains because the Orphans' Court did not determine the issue of domicile at the hearing. The complaint is without merit. The Court in its order thought it had jurisdiction "whether or not decedent was domiciled in Talbot County at the time of his death." We agree. Domicile would be an issue at this stage of the proceedings only if it is

alleged that the 1973 writing was executed in conformity with the law of Walker's domicile. Second, she asserts: "Assuming the Orphans' Court for Talbot County has jurisdiction to grant original probate to the 1973 writing of decedent, it was an error of law or an abuse of discretion by the Orphans' Court to hold the 1973 paper writing properly admitted to probate in July, 1973, or, alternatively, to permit the probate of the 1973 paper writing by accepting affidavits on April 9, 1974, without any order of court and without requiring the petitioner, George Ainslie Nugent to file a new petition that did comply in all respects with the law." It does not appear that the order of 9 April 1974, which is the only order pursued on appeal, admits the 1973 writing to probate. The order determines that the Orphans' Court has jurisdiction to grant probate to any will of the decedent, and we have concluded that this is correct provided such will executed outside of Maryland is in conformance with Estates & Trusts Art., § 4-104. But we have indicated that the proceedings to have the writing of 1973 admitted to judicial probate have not yet been had as required. Appellant has not been harmed by the matters which are the subject of the contention.

Appellee asks if the person named as executor in the will is authorized to employ counsel and compensate such counsel from the estate. He poses the question in answer to appellant's contention last above discussed. Appellant argued that a personal representative appointed in a will not yet probated and validity of which is questioned had no right to defend against a caveat to that will. Although we sympathize with appellee's attempts to understand and answer the contention as presented, the point he presents was not tried and decided below and is not properly before us. Maryland Rule 1085. We note, however, what the Court of Appeals said in *Webster v. Larmore*, 268 Md. 153, 170-171:

> "It is quite apparent, too, that the Legislative intent, as expressed in [Art. 93,] § 7-603, was that a defense of a will by either a personal representative (who presumably has qualified) or by a person nominated as personal representative (who

presumably has not qualified) should similarly be at the expense of the estate."

## SUPPLEMENTAL ISSUE

*The Appeal Status of the Order of 9 April 1974*

We think it advisable to give our reasons why we deem the order of 9 April 1974 to be a final judgment within the contemplation of Courts Art., § 12-501. See *supra*, note 1.

The general rule is that an appeal may be taken only from a final judgment. Courts Art., §§ 12-301, 12-302, 12-303. The status of the order of 9 April 1974 as a final judgment is not questioned by the parties, but, of course, the jurisdiction of this Court is statutory and may not be conferred by consent of the parties. *Lang v. Catterton*, 267 Md. 268, 275. Section 12-101 (f) of the Courts Article defines "final judgment" to mean "a judgment, decree, sentence, order, determination, decision, or other action by a court, including an orphans' court, from which an appeal, application for leave to appeal, or petition for certiorari may be taken." The Revisor's Note makes clear that the section does not attempt to specify what is an appealable final order. "That if left to case law, as at present. The purpose of the definition is merely to substitute the brief phrase 'final judgment' for the present 'final judgment, decree or determination,' or similar language."

Courts Art., § 12-501 expressly gives a party the right to appeal to the Court of Special Appeals from a final judgment of an orphans' court. The section combined former §§ 9 and 10 of Art. 5, giving effect to recent legislation regarding appellate jurisdiction, but otherwise, according to the Revisor, making only changes in style. The progenitors of § 12-501, however, appeared to speak in absolutes. Art. 5, § 64 as it appeared in the Codes of 1924, 1939 and 1951, and as § 60 in the Code of 1904, read:

"From all decrees, orders, decisions and judgments, made by the orphans' court, the party, who may deem himself aggrieved by such decree,

order, decision or judgment, may appeal to the court of appeals."

Chapter 399 (4), Acts 1957, amended the section, and as codified as Art. 5, § 9 it read:

"Any party may appeal to the Court of Appeals from any decree, order, decision or judgment of an orphans' court."

The amendment, in effect, merely omitted the language about an aggrieved party, presumably, in the view of the Court of Appeals, as surplusage. *Webster v. Larmore*, 270 Md. 351, 353. Even though the statute seemed to speak in absolutes, the Court of Appeals thought that it must be construed in the light of the restrictive gloss imposed by the Court's decisions. *Ibid.* Because the provisions of Art. 5, § 60, Code of 1904, Art. 5, § 64, Codes of 1924, 1939 and 1951, Art. 5, § 9, Code of 1957 and § 12-501, Courts and Judicial Proceedings Article, are in substance the same, prior decisions of the Court of Appeals construing the statute are apposite.

The decisions of the Court of Appeals early recognized that the meaning of the statute was as it now expressly provides, *viz.*, appeals shall be taken only from final judgments. *Collins v. Cambridge Hospital*, 158 Md. 112, 116. In *Collins*, final orders were characterized as "those actually settling rights of the parties." *Ibid. Pattison v. Firor*, 146 Md. 243, held that an appeal lies from an order of the orphans' court dismissing a petition of one of the heirs at law of a decedent asking that the court refuse to grant letters testamentary or of administration on the ground of decedent's non-residence. We think that the factual posture of *Pattison* is sufficiently comparable to that of the case before us to lead us to the conclusion that an appeal lies from the order here.

We distinguish *Collins v. Cambridge Hospital, supra,* in which the Court said, at 116: "An order determining in the affirmative only the question of jurisdiction in the court to hear the controversy and thereafter decide whether persons applying shall be made parties, is not such a final order [of

an orphans' court from which an appeal will lie under Code (1924) § 64]. *Rowe Co. v. Rowe,* 154 Md. 599, 604." The order found to be interlocutory overruled objections by caveators to the court's jurisdiction to determine whether other parties were such parties in interest that they could intervene as caveatees.[11] We believe this to be materially different from a determination that the court has jurisdiction to entertain probate of a will and appoint a personal representative. The effect of the order in the case before us brought the same result as the order in *Pattison,* namely, the refusal by an orphans' court of a request that it not assume jurisdiction over an estate because of the decedent's non-residence.

> *As to the order of 9 April 1974: parts 1 and 2 affirmed; appeal as to part 3 dismissed; case remanded for further proceedings in accordance with this opinion; costs to be paid by appellant.*

---

11. *Rowe Co. v. Rowe, supra,* the case cited as authority for the conclusion in *Collins,* held that an order directing an executrix to intervene as a defendant in an equity proceeding to compel issuance of stock was "interlocutory, not final in its nature, and is, therefore, not appealable."