603 A.2d 1385

Alexander LaGRANGE

v.

Linda HINTON.

No. 1027, Sept. Term, 1991.

Court of Special Appeals of Maryland.

April 9, 1992.

Robert S. McNeill, Glen Burnie, for appellant.

Richard W. Lawlor (Lawlor & Pappadeas, P.A., on the brief), Silver Spring, for appellee.

Argued before GARRITY, ALPERT and HARRELL, JJ.

ALPERT, Judge.

Alexander LaGrange, appellant, appeals the decision (grant of appellee's motion and denial of his cross-motion for summary judgment) of the Circuit Court for Anne Arundel County, which upheld an order of the Orphans' Court. The Orphans' Court rescinded its October 13, 1987 order, which established appellant as personal representative of his mother's estate (the late Lucille A. LaGrange), ostensibly because appellant had been convicted of an unnatural or perverted sexual practice (oral sex; see Md.Code Article 27, § 554). In his stead, the Orphans' Court, by its order of August 4, 1988, placed Linda Hinton, appellee and daughter of Lucille LaGrange, as successor personal representative.

Lucille LaGrange passed away on August 22, 1987. She left behind four children, two of whom are parties in the present action. Her will, admitted to probate, listed appellant as personal representative and appellee as successor personal representative. On August 27, 1987, acting upon appellee's petition for judicial probate, the Orphans' Court for Anne Arundel County appointed appellee as special administrator contingent upon the filing of proper papers and the posting of a $10,000 bond. The reason for the court's August 27, 1987 order apparently rested, in part, on appellant's conviction.

Although her brother, Alexander LaGrange, was named as Personal Representative in the Last Will & Testament, he has been convicted and is awaiting sentence for a crime he committed.

## FACTS AND PROCEEDINGS

Appellant filed a petition for probate on September 21, 1987, listing himself as personal representative. Subsequently, on October 6, 1987, the court conducted a hearing. The court listened to the various testimonies and arguments, and received two exhibits. Shortly thereafter, on October 13, 1987, the court issued its decision, in which it appointed appellant as personal representative of Lucille LaGrange's estate upon his filing of the proper papers and the posting of a $10,000 bond. Appellant did *not* post the bond.

Appellee took an appeal of the court's October 13th order to the Circuit Court for Anne Arundel County. She dismissed that appeal, pursuant to a stipulation between the parties, on June 20, 1988. Two days later, appellant sent a letter to the Orphans' Court requesting that it grant him "letters of administration." Much to appellant's dismay, the court, on August 4, 1988, apparently acting *sua sponte*, rescinded its previous order of October 13, 1987.

Appellant's attorney dispatched a letter to the court, in which he requested the court to vacate its latest order and

to conduct a hearing as he had previously asked. The letter provides, in relevant part:

> I [Robert S. McNeill, appellant's counsel] recently received the Court's August 4, 1988 Order which rescinded the October 13, 1987 Order which appointed Alexander LaGrange as Personal Representative. There was no prior notice to me, nor was any hearing held on the matter, contrary to my request.
>
> I am now reiterating my request for a hearing on this matter, and am requesting that the August 4, 1988 Order be vacated....

Not receiving the hoped for reply and results, appellant filed an appeal with the Circuit Court for Anne Arundel County. On appeal, the court granted appellee's motion for summary judgment, and denied appellant's cross-motion for the same.

> And the Court concludes, after having heard all the evidence—all the argument today, that it is a serious crime, and therefore the Court is going to grant the Summary Judgment [motion] of Linda Hinton, deny the Summary Judgment [motion] of Alexander LaGrange, and the Court finds that Linda Hinton should perform the duties of personal representative.
>
> .    .    .    .    .
>
> And it is further Ordered [that] Alexander LaGrange has committed a serious crime, and in accordance with Section 5–105 of the *Estates and Trusts Articles* [sic] of the Maryland Annotated Code, is not entitled to serve as personal representative. And it's further Ordered that the Order of the Orphan's [sic] Court of Anne Arundel County, dated August 4, 1988, appointing Linda Hinton as personal representative, is in full force and effect.

Before turning to other matters, the court gave appellant some advice.

> I might say that if you don't agree with the Court's conclusions, it seems to me you can get yourself a quick hearing up at the Court of Appeals on—Court of Special

Appeals on the stated facts, because you've got the facts, you can get an expedited appeal.

Appellant followed that recommendation, for he comes before us and asks two questions:

**1. Did the Circuit Court for Anne Arundel County err in failing to appoint the Petitioner personal representative of the Estate of Lucille LaGrange because both it and the Orphans' Court lacked jurisdiction to vacate its October 13, 1987 order appointing the Petitioner personal representative of the Estate of Lucille LaGrange?**

**2. Did the Circuit Court for Anne Arundel County err in deciding that Petitioner's conviction under Article 27, Section 554 was a "serious crime" for purposes of Section 5–105(b)(3) of the Estates and Trusts Article, and excluded him from appointment as personal representative of the Estate of Lucille LaGrange?**

1.

■ Appellant's jurisdictional argument is unavailing. He argues that the Orphans' Court lacked jurisdiction to rescind its October 13, 1987 order, in which the court appointed appellant as the personal representative, contingent upon his completion of procedural matters.[1] He overlooks the point that the status that he sought did not go into effect, for he did not file the necessary bond.

Appellant is correct to note that appellee "could not have appealed the Orphans' Court's October 13, 1987 order a second time on August 4, 1988...." *Johnson v. Johnson,* 265 Md. 327, 331–32, 289 A.2d 318 (1972) *(res judicata).* Appellee's appeal, filed October 23, 1987, took the fight from the Orphans' Court to the Circuit Court. Subsequently, appellee, pursuant to a stipulation, dismissed that appeal. Thus, judicial resolution of issues relating to Lucille

---

1. An order appointing a personal representative is final and appealable. *Wright v. Nugent,* 23 Md.App. 337, 357–58, 328 A.2d 362 (1974), *aff'd,* 275 Md. 290, 338 A.2d 898 (1975).

LaGrange's estate was once again in the Orphans' Court's domain. Then, on August 4, 1988, the Orphans' Court rescinded its October 13, 1987 order. The status accorded appellant by the latter order was never perfected because appellant did *not* file a bond.

   Furthermore, and fatal to his jurisdictional position, is the appeal he took to the Circuit Court for Anne Arundel County (filed on September 6, 1988). The Orphans' Court should have held a hearing before it decided to revoke appellant's status as personal representative, *Schmidt v. Chambers*, 265 Md. 9, 38, 288 A.2d 356 (1972); *Richards v. Richards*, 27 Md.App. 1, 14, 338 A.2d 377 (1975); however, appellant waived any error by instituting his appeal. The Circuit Court, under the authority of § 12–502 of the Courts Article, considered the parties' arguments as if they were raised for the first time. That section provides in part:

> (a) *In general; exception in Harford and Montgomery counties.*—(1) Instead of a direct appeal to the Court of Special Appeals pursuant to § 12–501 of this subtitle, a party may appeal to the circuit court for the county from a final judgment of an orphans' court. The appeal shall be heard de novo by the circuit court. The de novo appeal shall be treated as if it were a new proceeding and as if there had never been a prior hearing or judgment by the orphans' court. The circuit court shall give judgment according to the equity of the matter.
>
> . . .

Thus, appellant triggered the Circuit Court for Anne Arundel County's jurisdiction over Lucille LaGrange's estate, and the issues arising out of its probate.

Late last year, the Court of Appeals in *Kaouris v. Kaouris*, 324 Md. 687, 715, 598 A.2d 1193 (1991), discussed the Orphans' Court's jurisdictional province and said:

> [W]e hold that a circuit court's jurisdiction to hear an appeal from an orphans' court *de novo* depends upon whether the orphans' court had jurisdiction over the case in the first place.

As discussed *supra,* the Orphans' Court had jurisdiction over Lucille LaGrange's estate. By issuing an order appointing a personal representative, the court implicitly made a determination of jurisdiction. The Orphans' Court was empowered to settle disputes arising out of the estate's probate until appellee's appeal. Once appellee dismissed her appeal, the court's jurisdiction attached again. Appellant's present appeal, however, divested that court of jurisdiction, and placed all contentions, *de novo,* before the Circuit Court for Anne Arundel County. § 12–502 of the Courts Article; *Brees v. Cramer,* 322 Md. 214, 219 n. 2, 586 A.2d 1284 (1991).

Our present duty is limited to a review of the Circuit Court's granting of appellee's motion for summary judgment, and its converse ruling on appellant's cross-motion for summary judgment.[2]

2.

■ Appellant begins his barrage with the following sentence.

A conviction under Article 27, Section 554, has absolutely no bearing on the ability to discharge the duties of a personal representative, [and] is therefore not a "serious crime" in that context, and cannot be the basis for exclusion from appointment as personal representative.

For reasons that we will explicate, we conclude that a conviction under Md.Code Article 27, § 554 fits into the category of "serious crime," as enumerated in § 5–105(b)(3) of the Estates and Trusts Article, and can, by itself, disqualify an individual from serving as a personal representative.

The statute at issue is § 5–105(b)(3) of the Estates and Trusts Article.

---

**2.** *Cf. Estate of Soothcage v. King,* 227 Md. 142, 146, 176 A.2d 221 (1961) ("The appeal to the Circuit Court under Sec. 25 of Art. 5 of the Code (1957) required a trial *de novo.* Therefore, neither the testimony before the Orphans' Court nor its findings thereon are now of any controlling effect.").

(b) *Persons excluded.*—Letters may not be granted to a person who, at the time a determination of priority is made, has filed with the register a declaration in writing that the person renounces the right to administer or is:

.    .    .    .    .

(3) Convicted of a serious crime[.]

As appellant notes, no Maryland court has published an opinion interpreting the words "serious crime" as used in § 5–105(b)(3). Thus, we turn to the statute's legislative history as an alternative avenue to discern its meaning and intent.

In 1968, § 5–105 would have been found in Md.Code Article 93, § 59.[3]

> If any person named as executor in a will shall be, at the time when administration ought to be granted, under the age of twenty-one years or of unsound mind, incapable according to law of making a contract *or convicted of any crime rendering him infamous according to law,* or if any person named as executor shall not be a citizen of the United States, letters testamentary or of administration (as the case may be) may be granted in the same manner as if such person had not been named in the will. (Emphasis added.)

Senate Bill 316 (1969), in part, repealed § 59 and, in its place, offered Md.Code § 5–105(b)(3).

> (b) *Exclusions.*—Letters shall not be granted to a person who, at the time any determination of priority is made,

---

**3.** The crux of § 5–105(b)(3) has long been a part of Maryland law. For example, in 1905, Md.Code Art. 93, § 51, read almost identical to Md.Code Article 93, § 59. The older provision, *quoted in Garitee v. Bond,* 102 Md. 379, 382, 62 A. 631 (1905) read as follows:

> If any person named as executor in a will shall be at the time when administration ought to be granted under the age of eighteen years or of unsound mind, incapable according to law of making a contract or convicted of any crime rendering him infamous according to law, or if any person named as executor shall not be a citizen of the United States, letters testamentary or of administration may be granted in the same manner as if such person had not been named in the will.

has filed with the register a declaration in writing that he renounces his right to administer or is

. . . . .

(3) Convicted of a serious crime[.]

The Governor's Commission to Review and Revise the Testamentary Law of Maryland (Henderson Commission) played a key role in the creation of the "Decedents Estates" title of the Md.Code. The Henderson Commission's second report contains comments pertaining to § 5–104. Unfortunately, none of the comments addresses the change of words from "infamous" to "serious crime."

*Garitee v. Bond,* 102 Md. 379, 62 A. 631 (1905), is the only published Maryland opinion which discusses whether an executor should lose his standing if convicted of an infamous crime. Charles E. Garitee, an attorney, by charging a fee of $12, had violated a federal statute that proscribed taking more than $10 from a pensioner for prosecuting the pensioner's claim. *Garitee,* 102 Md. at 381–82, 62 A. 631. According to the federal statute, Garitee's behavior constituted a misdemeanor.

> [A]nd any person who shall violate any of the provisions of this section or who shall wrongfully withhold from a pensioner or claimant the whole or any part of a pension or claim allowed or due such person or claimant under this Act shall be deemed guilty of a misdemeanor and upon conviction thereof, shall for each and every offense be fined not exceeding $500 or be imprisoned at hard labor not exceeding two years or both in the discretion of the Court.

Act of June 27, 1890, ch. 634, § 4, *quoted in, Garitee,* 102 Md. at 381, 62 A. 631.

The Orphans' Court, citing to a statute similar to the pre-1969 version of § 5–104,[4] concluded that Garitee had been convicted of an infamous crime, and removed him as executor of the estate in question. *Garitee,* 102 Md. at 382, 62 A.

---

4. See *supra* note 3.

631. The Court of Appeals pointed out that federal law labeled a crime infamous based upon its punishment, while Maryland law considered other factors. *Garitee,* 102 Md. at 383, 62 A. 631.

> The authorities generally, though not with entire uniformity, hold that the infamous nature of a crime was determined at common law by the character of the act itself and not by the penalty inflicted for its commission. The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi,* which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice.

The Court chose to follow Maryland common law, and reversed the Orphans' Court's decision. *Garitee,* 102 Md. at 384–85, 62 A. 631.

> Construing therefore as we should the expression "infamous crime," used in sec. 51 of Art. 93 of the Code, in the same manner that our predecessors construed it when used in the Constitution, we are compelled to hold that the statutory offense of which the appellant was convicted cannot be regarded by us as an infamous one merely because it was punishable at the discretion of the Court by a term of imprisonment which that Court might, in the exercise of its recognized power, have required him to serve in a penitentiary. Nor do we think that the statutory offense, of which the appellant was convicted, of making an overcharge for services in prosecuting a claim for a pension, and collecting the fee so charged without complying with the provisions of the statute, involved the degree of moral turpitude which would have been requisite to make his transgression an infamous crime at common law.

Appellant, quite correctly, states that, currently, a conviction under Md.Code Article 27, § 554 does not render one infamous. Sodomy (§ 553), § 554's companion, is an infa-

mous crime. *Kirby v. State,* 48 Md.App. 205, 207–09, 426 A.2d 423, *cert. denied,* 291 Md. 777 (1981). Both sections appear under the caption "SODOMY." As Sutherland points out, contextual placement of a code provision is relevant for purposes of statutory interpretation.

> In order to achieve clarity, it is frequently necessary to recast large numbers of sections and rearrange their sequence in order to form a unified and consistent chapter. Thus in the construction of a particular code section, attention should be given to the entire chapter or even the entire code in order to determine the purpose and the objective of the legislature in organizing the material.

2A Sutherland Statutory Construction § 28.11 at 485 (Sands 4th ed. by N.J. Singer 1984). In addition to their proximity, both sections sanction lengthy periods of incarceration.

### § 553. Sodomy generally.

Every person convicted of the crime of sodomy shall be sentenced to the penitentiary for not more than ten years.

### § 554. Unnatural or perverted sexual practices.

Every person who is convicted of taking into his or her mouth the sexual organ of any other person or animal, or who shall be convicted of placing his or her sexual organ in the mouth of any other person or animal, or who shall be convicted of committing any other unnatural or perverted sexual practice with any other person or animal, shall be fined not more than one thousand dollars ($1,000.00), or be imprisoned in jail or in the house of correction or in the penitentiary for a period not exceeding ten years, or shall be both fined and imprisoned within the limits above prescribed in the discretion of the court.

.     .     .     .     .

See also *DiBartolomeo v. State,* 61 Md.App. 302, 307, 486 A.2d 256 (1985). Propinquity and punishment aside, § 553 and § 554 share another trait. In *Blake v. State,* 210 Md. 459, 124 A.2d 273 (1956), the Court of Appeals dismissed appellant's contentions, among several, that there was a

variance between his indictment and the proof at his trial. The State had charged that appellant committed an unnatural and perverted sexual practice. At trial, the State's primary witness testified, *sans* objection, that appellant performed sexual practices upon him, and sodomized him. Appellant admitted the former, but denied the latter.[5]

The Court affirmed appellant's conviction, and stated, *Blake*, 210 Md. at 464, 124 A.2d 273:

> Assuming, without deciding, that the testimony as to the crime of sodomy is not within the scope of sec. 627 [unnatural and perverted sexual practices], although it is obviously an unnatural and perverted sexual practice, we think it was so closely linked to the crime charged as to fall within the exception noted, under the circumstances of this case.

The three traits that § 554 shares with § 553, are strong enough, in our opinion, to render infamous a person convicted under § 554.

We are aware that § 554 does not apply to consensual, noncommercial, heterosexual activity between adults in the privacy of the home. *Schochet v. State*, 320 Md. 714, 731–32, 734, 580 A.2d 176 (1990). Activity falling outside of this protected zone is punishable. *Neville v. State*, 290 Md. 364, 430 A.2d 570 (1981); *Gooch v. State*, 34 Md.App. 331, 367 A.2d 90 (1976), *cert. denied*, 280 Md. 735 (1977). Appellant's conviction attests to that.

Equating infamous crimes to serious crimes is not the only method of interpretation available to us. The definition section of Md.Code Article 27A (Public Defender), § 2 provides us with some insight.

> (a) For the purposes of this article, the following terms shall have the meanings ascribed to them in this section:

>      .     .     .     .     .

---

5. The record did not contain evidence of oral perversion, but there was undisputed testimony of other sexual activities. *Blake*, 210 Md. at 462, 124 A.2d 273.

(h) "Serious crime" means:

(1) A felony;

(2) A misdemeanor or offense, the penalty for which involves the possibility of confinement for more than three months or a fine of more than $500, or any other offense where, in the opinion of the court, either the complexity of the matter, or the youth, inexperience, or mental capacity of the accused, may require representation of the accused by an attorney; and

(3) An act that, except for the age of the person involved, would otherwise be a serious crime.

Under § 2(h)(2), appellant's conviction would qualify as a serious crime and he would be entitled to the public defender's services.

Another area which is relevant in resolving the present dilemma is the jury trial guarantee of the United States Constitution (sixth amendment) and Maryland's Declaration of Rights (article 5). In *Cabana v. Bullock*, 474 U.S. 376, 384, 106 S.Ct. 689, 696, 88 L.Ed.2d 704 (1986), the Supreme Court reiterated that "[a] defendant charged with a serious crime has the right to have a jury determine his guilt or innocence...." A crime takes on the label "serious" or "petty" based upon the length of the concomitant sentence. In *Codispoti v. Pennsylvania*, 418 U.S. 506, 512, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974), the Supreme Court held:

> [O]ur decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes.

In Maryland, the right to a jury trial attaches if the offense charged is infamous *or* if the punishment is infamous (and to offenses which have traditionally been tried before juries). *Kawamura v. State*, 299 Md. 276, 291, 473 A.2d 438 (1984). The Court of Appeals, in *Danner v. State*, 89 Md. 220, 226, 42 A. 965 (1899), reasoned that appellant

was entitled to a jury trial because his punishment was infamous.[6]

The right to demand a jury trial, being as we have thus seen guaranteed only to such crimes and accusations as have by the regular course of the law and established mode of procedure as therefore practised, it becomes necessary to inquire as to what class of offences entitle the party to its enjoyment. It is clear that it cannot be demanded in many minor offences. These could always be reached in summary proceedings. [B]ut it is difficult to define with precision the class of cases that could be so tried. It may, however, be stated as a general rule that for any criminal offence [sic] for which a person is liable to infamous punishment, a trial by jury cannot be denied him. It cannot be questioned that confinement in the penitentiary is an infamous punishment. (Citations omitted.)

Appellant's position must give way to the weight of authority to the contrary. If we were to adopt appellant's view, we would create an anomaly: theoretically, appellant would be able to argue that he is entitled to a jury trial and the public defender's good offices, yet, *at the same time,* maintain that his conviction should not disqualify him from serving as a personal representative. We choose not to travel down that path.

Therefore, we hold that the trial court did not err when it granted appellee's motion for summary judgment and denied appellant's cross-motion for summary judgment.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.

---

6. *Hall v. State,* 22 Md.App. 240, 244 n. 5, 323 A.2d 435 (1974), *cited in Kawamura,* 299 Md. at 291 n. 17, 473 A.2d 438, recognizes that there seems to be a distinction between infamous *punishment* and infamous *crimes.*