# JAMES T. MATTINGLY *vs.* SAMANTHA M. MONTGOMERY.

*Action for Injury Caused by Negligent Driving of Defendant's Servant —Evidence of Negligence—Instructions to the Jury—Impeaching Witness.*

A master is liable for an injury caused by the negligent driving of his servant when acting in the course of his employment.

Defendant's servant driving a horse and wagon, in the course of his employment, across railway tracks at a city crossing, saw an engine approaching on one of the tracks and drove rapidly in front of it. Plaintiff was going across the tracks in front of the wagon and was on the sidewalk, when she was struck from behind by the horse and wagon, receiving injuries to recover damages for which this action was brought. Defendant's driver saw or could have seen the plaintiff walking in front of him. He testified that a watchman stationed at the crossing had beckoned to him to pass over, and that the approaching engine stopped in the middle of the crossing and let off steam, which noise frightened his horse. There was evidence that the driver, after passing the engine, could have turned to one side and avoided striking the plaintiff. *Held*, that the evidence to show negligence on the part of the driver was sufficient to take the case to the jury.

*Held*, further, that the jury were properly instructed that the plaintiff is entitled to recover if they find that the driver, before he went upon the crossing, saw, or by the exercise of ordinary care could have seen, the plaintiff upon the crossing, and could have seen that his driving in front of the engine would endanger the plaintiff, and that his going upon the crossing at that time did endanger the plaintiff and was the proximate cause of the injury.

In such action, it was proper to refuse an instruction asked by the defendant which ignored the testimony showing that the danger which confronted the driver was clearly visible, and that his driving across, under the circumstances, was likely to result in injury to the plaintiff.

In an action to recover damages for injury caused by negligent driving, the driver testified that he was going slowly at the time, while the plaintiff's evidence showed that he was driving very rapidly. Under these circumstances, the driver may be asked if he had not been arrested and fined for fast driving on this very occasion, without producing the record of the conviction, since the fact proved tended to impeach the credibility of the witness, and to impair the weight of his evidence.

*Decided November 13th, 1907.*

Appeal from the Circuit Court for Allegany County (ROBERT R. HENDERSON, J.), where there was a verdict and judgment for the plaintiff for $2,000.

*Defendant's 2nd Prayer.*—If the jury find from the evidence that defendant's driver, Harmison, at the time of the accident complained of, drove the defendant's horse and wagon down Virginia avenue to the five tracks of the Baltimore and Ohio Railroad Company (if the jury so find) and that when said driver approached said crossing the signalman of the said railroad company gave him a signal to cross and that thereupon the said driver drove on said tracks on said crossing and that when he got upon the first track with his wagon he discovered coming towards him a locomotive on the third track, and that if the jury find that said crossing was a very dangerous crossing used by the railroad for switching its trains backwards and forwards at that point, and that it would have been dangerous for said driver to stop on said crossing and that said engine was approaching at a rate of speed from four to six miles an hour and that when said driver and his horse were very near said engine the said engine had applied air to its brakes and let off steam in great quantities making a loud noise and thereby frightening said horse, so that it plunged and jumped at that point, and that under all the facts and circumstances surrounding the situation then the said driver did his best to control and manage said horse and that in so doing drove

rapidly across the track on which said engine was approaching, and got across only three or four feet in front of said engine, which stopped, if the jury so find, within three or four feet of striking the wagon, and that if the jury finds that the attention of said driver was reasonably and properly directed to escaping from a collision with said engine and that he was reasonably engaged in saving himself and team from imminent and immediate danger and that at that time while so engaged his horse and wagon came into collision with the plaintiff and injured her, then such injury and damage was an accident and not negligence and the plaintiff cannot recover therefor and their verdict must be for the defendant. (*Rejected.*)

The cause was argued before Briscoe, Boyd, Schmucker, Burke and Rogers, JJ.

*Ferdinand Williams* and *Finley C. Hendrickson*, for the appellant.

*Arch. A. Young* and *Frank A. Perdew*, for the appellee.

Burke, J., delivered the opinion of the Court.

This is a suit brought against the master to recover damages for injuries alleged to have been sustained by the plaintiff in consequence of the negligence of the defendant's servant. On the 12th of July, 1906, George Harmison, ran down and severely injured the plaintiff by a horse and wagon of the defendant. The case was tried in the Circuit Court for Allegany County, and from a judgment entered in that Court, the defendant has brought this appeal.

The declaration alleges that on the date mentioned while the plaintiff was walking along Virginia avenue at or near a point just immediately south of the Baltimore and Ohio Railroad crossing at said avenue, it being one of the public highways of Allegany County, she was run down and struck by a horse and wagon driven by said Harmison who was driving the horse as the agent and servant of the defendant, and was knocked down and rendered unconscious and was seriously

cut in the forehead and otherwise permanently injured; that at the time said plaintiff was injured she was using due care and caution in passing along said highway, and that the injuries received by her were the result of the recklessness and negligence of the agent and servant of the defendant in driving and controlling the horse.

There are certain facts which the evidence establishes beyond all question. These are, first, that the plaintiff was struck and injured by the horse and wagon driven by Harmison; second, that at the time she was so injured, Harmison was driving the horse as a servant of the defendant, and was acting at the time within the scope of his employment, and in his master's service. If the injuries which the plaintiff sustained were the result of the negligence of Harmison, the defendant must be held liable; provided she was free from contributory blame. The principle upon which the master's liability is determined in cases of this kind is thus stated in *Evans* v. *Davidson*, 53 Md. 249; "If the servant be acting at the time in the course of his master's service and for his master's benefit, within the scope of his employment, then his act, though wrongful and negligent, is to be treated as that of the master, although no express command or privity of the master be shown. This principle is sanctioned by all the authorities."

Negligence in the defendant's servant is the foundation of the action, and the proof must show, or tend to show that the injuries sued for were caused by that negligence. The existence of negligence must be sought for in the facts and surrounding circumstancas of each particular case. In *Cooke* v. *The Baltimore Traction Company*, 80 Md. 554, we said: "Negligence is essentially relative and comparative, not absolute. It is not even an object of simple apprehension apart from the circumstances out of which it grows. As these circumstances necessarily vary in their relations to each other, under different surroundings, they inevitably change their original signification and import. Hence it is intrinsically true that those things which would not under one condition constitute negligence, would on the other hand under a different, though not neces-

sarily an opposite condition, most unequivocally indicate its existence.".

Now, the record before us, contains evidence tending to show the following facts: Virginia avenue in the City of Cumberland is crossed by five tracks of the Baltimore and Ohio Railroad Company. The crossing is about forty feet wide, and the distance across the tracks is about seventy-five feet. All the witnesses who testified upon the point spoke of this crossing as being very dangerous, because of the frequent passing of trains and the shifting of engines at that point. The evidence shows that there was a watch box near the crossing when the plaintiff was injured, and that there was a foot path, or pavement on Virginia avenue close to the watch box. The plaintiff lived in South Cumberland, and on the day of the accident had gone to the store of Mr. Kline, and was returning to her home. In order to reach her home it was necessary for her to cross the tracks of the railroad, which she had done in safety, and when she was in the act of stepping off of the track to the pavement on Virginia avenue she was struck by the horse and wagon which came across the tracks behind her, and which she neither saw nor heard. There was an engine on the tracks, about half way over the crossing at the time she was injured. This engine was in charge of Conductor George W. Holtzman, and had come up to the crossing from the lower end of the company's yard. There is also evidence tending to show that Harmison drove down Virginia avenue at a rapid rate of speed; going about twelve miles an hour, and without stopping continued across the tracks; although he saw the engine approaching when he reached the edge of the crossing. He continued across at a rapid speed, but the engine reached the crossing before he could get over. The engine stopped about midway of the crossing, and when Harmison attempted to pass in front of it his horse became frightened at the noise of escaping steam and bolted, or was pulled upon the sidewalk, and knocked down and injured the plaintiff. Mr. Holtzman, who was in charge of the yard engine, testified that his engine had stopped just about half way over the crossing; that he saw

the defendant's horse rush past in front of the engine, and strike the plaintiff and knock her down; that she fell on her face and turned over and that the wheel struck her along side of the head; that the horse was going rapidly, and that the plaintiff was on the sidewalk when she was struck. James A. Hunt, who had charge of another engine which was upon the tracks at the time of the injury, testified that he saw the horse coming down Virginia avenue "at a pretty tolerable fast rate of speed," about twelve miles an hour, and that it did not stop before going upon the crossing. The witness, John Hunt, who was a fireman on the engine in charge of James A. Hunt, testified as follows: "We had come up to the crossing there and stopped, and I don't know how long we were standing there. It wasn't very long. The brakeman was standing on the foot board, and all at once I looked across the crossing and noticed this team coming across hurriedly, and there was a yard engine standing on the crossing, and I guess probably may be eight or ten feet of the front end of the engine had approached the crossing and there was room enough for me to see, and this lady was walking down the sidewalk, we call it a sidewalk, it is close to the watch box, and all at once I saw that he was going to hit the lady and I started to hollow, but the deed was done too quick, the horse struck the lady and knocked her down." He further said that the engine had gotten up to the crossing and stopped. That the team had not gotten in front of his engine, but the yard engine "was stopped dead still."

There was evidence tending to show that Harmison could have stopped the team with safety after he had gone upon the crossing and thus avoided the injury, and also that after passing the engine he might have turned to the left and avoided striking the plaintiff. There was nothing to obstruct his view across the track, and it might have been reasonably inferred from all the evidence that Harmison could have seen the plaintiff had he looked. Harmison, the driver of the team, testified that he was signalled to cross by the watchman, Mr. Coonrod, who has since died; that he knew the horse would

frighten at steam if he got close to it; that after getting about half way over the crossing he saw the engine approaching, running at the rate of five miles an hour; that he drove down Virginia avenue to the crossing "pretty slow;" and that he slacked up at the crossing, but did not stop; that he heard the engine puffing, and that it was fifteen or twenty yards from the crossing when he first saw it, that he had just hit the edge of the crossing when he first saw it, but that he did not stop, but thought he could get across before the engine got there; that when the engine got within five feet of him the "fellow slapped on his air," and "my horse got scared and commenced to plunge, and I held on to him all I could, and the woman I didn't see her when the horse hit her—the wagon hit her is all I know." On cross-examination he testified as follows:. "Q. How far was your horse on the crossing before he started to wave? A. I wasn't on the crossing when he waved me. Q. How far were you away from the crossing? A. At the edge of the crossing. Q. And you saw the engine at that time? A. Not right then. Q. When did you see it? A. I saw it after I started on the crossing, right on the edge of the crossing, it was coming up. Q. And you thought you could get ahead of the engine? A. Yes sir. Q. You took the chances of beating that engine, didn't you? A. Yes sir. Q. Now Mr. Harmison if you hadn't made up your mind that you could beat that engine out, you could have stopped your horse in time, couldn't you? You could have stopped him and waited until that engine came up? A. But he waved me across. Q. If you had not made up your mind that you could beat the engine at the time you saw it, couldn't you have stopped your team and avoided the trouble? A. Yes sir." He admits that he knew the crossing was dangerous, and his testimony that his horse became frightened and began to plunge and jump as it passed the engine, is corroborated by the testimony of other witnesses, one of whom stated it began to plunge when it first reached the crossing. Another witness, Mr. Suman, stated that as Mr. Harmison came down Virginia avenue the watchman "waved him over." The evi-

dence does not disclose the exact location of the plaintiff upon the crossing at the time Harmison reached the tracks, but that she was on the crossing in close proximiyy to the engine at which the horse became frightened, and that she could have been seen by Harmison, is we think, clearly apparent had he used due care.

This outline of the main and controlling facts of the case is sufficient to enable us to dispose of the legal questions raised upon the record by the action of the Court upon the prayers and the instruction, which the Court granted at its own instance.    There is nothing whatever in the case that we can see to show that Mrs. Montgomery in any way contributed to the injury she sustained, and, therefore, the only question to be considered is that of the actionable negligence of the defendant's servant.    At the close of the whole case the Court granted two prayers offered on behalf of the plaintiff, and submitted one instruction of its own.    The plaintiff's prayer number two and a half which was granted, told the jury that if they found that the plaintiff was injured on the day in question by being struck by the horse and wagon of the defendant, whilst under the management and control of the servant or agent of the defendant; and that said injury resulted directly from the want of ordinary care and prudence on the part of the servant or agent of the defendant, and not from the want of ordinary care upon the part of the plaintiff directly contributing thereto, then the plaintiff was entitled to recover. Her fifth prayer, which was granted, is the ordinary prayer in cases of this kind where permanent damages are claimed. There being no special exceptions filed to either of these granted prayers, they, in connection with the instruction granted by the Court, fairly and fully submitted the whole case to the jury.    But the appellant's counsel, both in the brief and in their oral argument, have contended, with much earnestness, that the Court erred in that instruction, and that the appellant was thereby injured.    That instruction will be presently considered.

The defendant submitted four prayers, all of which were

refused.  His first prayer sought to take the case from the jury upon the ground that the plaintiff had offered no evidence legally sufficient to entitle her to recover.  This prayer was properly refused.  The evidence, to which we have referred shows that Harmison attempted to cross the tracks in the face of open and obvious danger that he took the chances of getting over before the engine, which he saw approaching, would reach the crossing; he knowingly placed himself in the position of peril and great danger, and he might have seen that his attempt to cross, under the conditions which then confronted him, would likely result in injury to the plaintiff who was on the crossing at the time.  It is difficult to imagine a more fool-hardy and reckless act, and under all the authorities must be pronounced negligence.

The instruction by the Court to which the appellant so seriously objects, is as follows: "The jury are instructed that if they believe from the evidence that the plaintiff while exercising due and reasonable and proper care on her part, was injured by being struck by a horse and wagon of the defendant, while said horse and wagon was being driven by the agent or servant of the defendant, upon the business of the defendant, and if they further find that the said injury was caused by the want of reasonable, due and proper care of the defendant's servant or agent, then their verdict must be for the plaintiff, and in considering the question of the defendant's negligence they are instructed.

(1) That even although they find that the defendant's servant or agent in going upon said crossing at the time that he did, exercised all due, reasonable and proper care and caution, still their verdict must be for the plaintiff provided they further find that, after getting into a place of danger to himself (if the jury so find) he did not, in endeavoring to extricate himself, use all proper, due and reasonable care and caution, under all the circumstances of the case to avoid injury to the plaintiff, if the jury believe either that he saw the plaintiff or by the exercise of reasonable care and caution, that he could have seen her in time to avoid striking her and that the injury resulted from such failure to use such care and caution, or—

(2) If they believe from the evidence that the defendant's agent or servant did not use due care and caution in going upon the crossing at the time he did, and that he either saw or could by the use of ordinary or reasonable care on his part, have seen the engine approaching (if the jury shall so find) then even though the jury may find that the railroad watchman beckoned him across, still the plaintiff is entitled to recover, if the jury shall further find that the defendant's agent or servant, before he went upon said crossing either saw or by the exercise of ordinary care and caution could have seen the plaintiff on said crossing, and could have seen that the driving in front of said engine by him would endanger the plaintiff (if the jury shall so find) and if they find that such going upon the crossing by him at the time he did, did endanger the plaintiff and was the efficient and proximate cause of the injury, although the jury may believe that the approach of the engine and the escaping steam may have frightened the defendant's horse, unless they shall further believe from the evidence that the injury would have occurred without the negligence of the defendant's agent or servant."

This instruction, in our opinion, is free from all possible objection. There being evidence tending to establish negligence on the part of the driver, this instruction declares the correct rule to guide the jury in determining the liability *vel non* of the defendant. There is testimony in the record tending to support every hypothesis of the instruction. It is not open to the criticism so strenuously urged against it that it makes the mere negligent going upon the crossing the proximate cause of the injury, but the proposition which it really asserts is this, that if the jury found that Harmison, before he went upon the crossing, saw or by the exercise of ordinary care could have seen the plaintiff upon the crossing, and could have seen that his driving in front of the engine would endanger the plaintiff, and if they found that such going upon the crossing at the time he did, did endanger the plaintiff and was the proximate cause of the injury, the defendant was liable. This instruction is predicated upon a state of facts which would con-

vict the driver of negligence, and connect this negligence directly with the resulting injury. All the facts and circumstances in the case, and all the legitimate and rational inferences properly deducible therefrom were open for discussion, and the considerction of the jury under this instruction.

The defendant's second, third and fourth prayers were properly rejected. His second prayer attaches an undue importance to the signal said to have been given to the driver by the watchman, and they all ignore the testimony tending to show that the danger which confronted him was open and visible to him, and that his crossing under the circumstauces was likely to result in injury to the plaintiff. As all the facts upon which the defendant relied to exonerate him from the responsibilty were left to the jury under the instructions given, in no aspect of the case can it be said that there was reversible error in the rulings of the Court.

There is one other exception. The Court permitted the plaintiff to prove by Harmison, over the objection of the defendant, that he had been arrested and paid a fine for fast driving on this very occasion. There was decided conflict between the testimony of Harmison and the plaintiff's witnesses as to the speed he was driving when he reached the tracks and when he attempted to cross. The credibility of the witness was, therefore, directly in issue upon a material point, and the fact proved tended to impair the weight of his evidence, and was properly admitted without the production of the record of conviction. The action of the Court in allowing this testimony to go to the jury is supported by the case of *McLaughlin* v. *Mencke*, 80 Md. 83. Finding no error in the ruling of the Court, the judgment will be affirmed.

*Judgment affirmed, with costs above and below.*