# SIMON LAVINE

*vs.*

# NATHAN ABRAMSON.

*Automobile Accident—Evidence—Traffic Court Hearing—
Burden of Proof—Duty of Passenger—Con-
tributory Negligence.*

Where the important conflict of evidence was as to the speed at which defendant was driving his automobile at the time of the accident to plaintiff, it was proper to exclude a question asked a witness by plaintiff as to the verdict of the traffic court on a hearing in connection with the accident, it not appearing that the question of speed was involved in such hearing, and plaintiff not stating what. he expected to prove in regard thereto.                                                      p. 226

It was proper to instruct the jury that the mere happening of the accident raises no presumption of negligence on defendant's part in operating his automobile, but that the burden was on plaintiff to establish by a fair preponderance of the evidence that negligence on defendant's part caused the accident, and that if the mind of the jury was left by the evidence in a state of even balance as to the existence of such negligence, the verdict must be for defendant.                                p. 227

Where a person rides in another's vehicle in mere companionship with the driver, engaged in mutual adventure, it is as much his duty as that of the driver to observe dangers and to avoid them, if practicable, by suggestion and protest, and his failure so to do constitutes contributory negligence precluding his recovery on account of the driver's negligence.

pp. 227, 228

A prayer in regard to contributory negligence on plaintiff's part is not defective because it is based on plaintiff's version of the case, and leaves to the jury the finding of the facts necessary to constitute contributory negligence.                          p. 229

*Decided January 10th, 1923.*

Appeal from the Superior Court of Baltimore City (DOB-LER, J.).

Action by Simon Lavine, a minor, by Morris Lavine, his father and next friend, against Nathan Abramson. From a judgment for defendant, plaintiff appeals. Affirmed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Sidney L. Nyburg,* with whom was *Archibald Sykes* on the brief, for the appellant.

*William D. Macmillan,* with whom were *Semmes, Bowen & Semmes* on the brief, for the appellee.

THOMAS, J., delivered the opinion of the Court.

This suit was brought in the Superior Court of Baltimore City against the appellee and William B. Rennie to recover damages for injuries alleged to have been caused by the negligent operation of an automobile by the appellee, but was subsequently dismissed as to William B. Rennie.

The *narr.* charges that the defendant owned and operated an automobile, and that while the same was being operated by him in Baltimore City, "and while the infant plaintiff was lawfully riding therein as an invited guest of the * * * defendant, and because of the careless, negligent and reckless driving and operation of said automobile by the * * * defendant * * * the said vehicle was caused to leave the roadbed in which it was running, and caused to collide with a wall, whereby the * * * plaintiff, without any negligence or carelessness whatever on his part contributing to the same, suffered serious and permanent injuries." The verdict and judgment in the court below being for the defendant, the plaintiff has brought this appeal, the record of which contains three exceptions to the rulings of the court below on the evi-

dence, and one to the granting of defendant's fourth, sixth and seventh prayers.

The plaintiff testified that, while he was on the corner of North and Madison Avenues talking to some young men, about 10 o'clock at night of October 5th, 1920, the defendant and his cousin, a young lady, drove up in a two-seated roadster and invited him to get in; that he got in, and after driving around for a while they drove down to the W., B. & A. Station in order that the defendant's cousin might catch a car for her home in Anne Arundel County; that when they got to the station they found that it was too late for her car, and the defendant decided to take her to her home, beyond Glenburnie, on the Annapolis Road; that they took her to her home and waited there about five minutes until she got into her house, and that as they started back to Baltimore he told the defendant that he was tired, that he could take his time, and that he, the plaintiff, would try to get a little sleep ;that he dozed off from time to time until he got to the Hanover Street bridge, when he got wide awake and found that the defendant was in pursuit of or chasing two motorcycles; that he noticed that one of the motorcycles had its rear light out; that he heard the defendant yell to the man, a colored man, to stop, but he did not answer, and that made the defendant mad, and the defendant was chasing him, "to have him locked up or something," he did not know what the defendant wanted to do with the man; that the defendant was driving at the rate of between fifty and fifty-five miles an hour, and that he, plaintiff, took out his fountain pen and note book for the purpose of taking the number of the motorcycle as soon as he got a chance; that as they approached Ostend Street, driving at the rate mentioned, the motorcycle, which was ahead and a little to the right of them, and moving a little faster, "swerved over" towards the front of the car; that he did not know whether the colored man did it for the purpose of causing an accident, or intended to turn down Ostend Street; that the defendant, instead of going straight ahead, which he could have done without hitting the motorcycle, also turned to the

left and seemed to lose control of his car, and the car struck the wall of a house with great force, wrecking the car and causing the injuries complained of. The plaintiff further testified that, when he discovered that the defendant was chasing the motorcycle and driving at the rate mentioned, the only thing he did was to take out his fountain pen and note book for the purpose of making a note of the number of the motorcycle.

The defendant testified that he met the plaintiff on the night of the accident at the corner of Madison and North Avenues, where he had stopped to get some cigarettes; that he and the plaintiff got to talking about the car, and the plaintiff asked him where he was going, and that when he told the plaintiff that he was going to take his cousin "to the train to go home," the plaintiff asked him if he could go along; that they drove down to Camden Station, and when he found that they had missed his cousin's train he proposed to the plaintiff that they drive her to her home at Boone Station, and said to him that if he preferred it he would take him home first; that they took his cousin home, and that on their way back, driving at about eighteen miles an hour and going north on Hanover Street, when they got to Ostend Street "there happened to be a motorcycle ahead of me" and it "swerved to the left practically compelled me to do that way to avoid hitting him, and as I swerved my car to the left I practically lost control of it at that time"; that he ran into the wall of the house and must have hit it with "considerable force"; that his car was "a very speedy car * * * and just as soon as I lost control of my car my foot may have gone down on my accelerator, which made the car shoot out very fast and hit that wall"; that he turned the car to the left to avoid hitting the man; that at the time the motorcycle turned in front of him he, the defendant, was going about eighteen miles an hour, and that at no time did the plaintiff protest against the speed of his car.

The defendant was called as a witness for the plaintiff, and after stating that he had had a hearing in reference to the

accident "in the Traffic Court of Baltimore City" he was
asked: "Now, will you be good enough to tell us the verdict
in that case? " On cross-examination he was again asked
whether there was "a hearing in the traffic court as the result
of this accident," and "What the verdict of the traffic court
was," and the refusal of the court to permit the witness to
answer these questions is the subject of the first three excep-
tions. The appellant contends that the evidence referred to
in these exceptions was admissible under the ruling of this
Court in the case of *Mattingly* v. *Montgomery,* 106 Md. 461.
In that case the driver of the team, Harmison, testified that he
was driving very slowly, while the plaintiff's witnesses stated
that he drove across the crossing at the rate of twelve miles
an hour, and in disposing of an exception to the ruling of the
trial court permitting the plaintiff to prove by Harmison that
he was arrested and paid a fine for fast driving on that occa-
sion, this Court said: "There was decided conflict between
the testimony of Harmison and the plaintiff's witnesses as
to the speed he was driving when he reached the tracks and
when he attempted to cross. The credibility of the witness
was, therefore, directly in issue upon a material point, and
the fact proved tended to impair the weight of his evidence,
and was properly admitted without the production of the
record of conviction." In the present case the important
conflict between the testimony of the plaintiff and the defend-
ant was in reference to the speed of the car. The questions
asked the defendant, unlike the evidence in *Mattingly* v.
*Montgomery, supra,* were not directed to that feature of the
case, and the speed of the car may not have been involved in
the hearing referred to. There was no offer by the plaintiff
to show by the evidence rejected that the defendant had been
fined for fast driving, and no statement of what he proposed
to prove by such evidence. Under such circumstances this
Court has no way of determining whether the answers to
these questions would have tended to discredit the witness, or
whether the plaintiff was injured by the rulings complained
of.

At the conclusion of the case the court below granted, as we have said, the defendant's fourth, sixth and seventh prayers. The fourth prayer was approved by this Court in *Sullivan* v. *Smith,* 123 Md. 546. The sixth, while not very skilfully drawn, in effect instructed the jury that if they found that the plaintiff was riding in the defendant's automobile "in mere companionship with the defendant and engaged upon a mutual adventure," that it was the duty of the plaintiff to "take observation of dangers," and to avoid them "if practicable by suggestion and protest," and to exercise ordinary care to avoid injury, and that if they found from the evidence that the defendant's car was proceeding at the dangerous speed mentioned in the evidence, and that the plaintiff failed to observe or protest against the same, then the plaintiff was guilty of contributory negligence and their verdict should be for the defendant. The appellant insists that this prayer was taken from the case of *United Rys. Co.* v. *Crain,* 123 Md. 332, which was a case of a suit by the guest, not against his host but against a third party, and that the rule applicable to a case like the present is stated in *Fitzjarrell* v. *Boyd,* 123 Md. 497, where this Court quotes with approval the statement in *Huddy on Automobiles,* sec. 113: "Although he pays nothing for riding, he is, nevertheless, in the care and custody of the owner or driver of the machine and is entitled to a reasonable degree of care for his safety. If the driver has negligently run into some obstacle on the highway and thereby injured the guest, undoubtedly the owner and the driver would be liable to civil suit for damages. One who voluntarily accepts an invitation to ride as a guest in an automobile does not relinquish his right of protection from personal injury caused by carelessness, and it should be understood by owners of motor vehicles that they assume quite a serious responsibility when they invite others to ride with them, especially persons who by reason of weaknesses are subject to injury from slight causes." In the *Fitzjarrell* case, however, the prayer in regard to contributory negligence was granted, and the Court in what we have quoted was dealing

only with the question of the liability of the owner and driver of the automobile. In the *Crain* case, *supra*, the question of the duty of a guest was fully considered by this Court, and JUDGE PATTISON adopted as the correct statement of the rule the following language of the Court in *Brommer* v. *Penna. R. R. Co.*, 179 Fed. 577, 29 L. R. A. (N. S.), 924: "Under the facts of this case the relation that the plaintiff sustained to his companion Pfeutze did not permit him to sit dumb and inert in the vehicle, taking no heed of a known danger, permitting Pfeutze to drive into a pitfall or on a deadly railroad track, implicitly trusting his life and limbs to the discretion of his companion without a word of warning or protest. It is now the better recognized rule of law that as to such a person situated as was the plaintiff, riding in a vehicle in mere companionship with his friend, engaged upon mutual adventure, it is as much his duty as that of the driver to take observation of dangers and to avoid them if practicable, by suggestion and protest. In other words, he is required to exercise ordinary care to avoid injury." See also *Balto. & O. R. R. Co.* v. *State, use of McCabe*, 133 Md. 219; *Wash., B. & A. R. Co.* v. *State*, 136 Md. 103; *Chiswell* v. *Nichols*, 137 Md. 291; *Dorchester County* v. *Wright*, 138 Md. 577. The suggestion that a totally different rule applies where the guest sues the driver who is the owner of the automobile, is not supported by reason or by any authority brought to our attention. The doctrine of the above cases is not that the negligence of the driver is imputed to his guest, but that it is also the duty of the guest to exercise ordinary care for his own safety. What will amount to contributory negligence or a failure on the part of the guest to exercise ordinary care must depend upon the facts and circumstances of each particular case. It is said in *Berry, Automobiles*, 3 ed., sec. 527: "When dangers, which are either reasonably manifest or known to an invited guest, confront the driver of a vehicle, and the guest has an adequate and proper opportunity to control or influence the situation for safety, if he sits by without warning or protest and permits himself to be driven carelessly

to his injury, this is negligence which will bar recovery," and in *Huddy, Automobiles* (6th ed.), sec. 694, the author says: "One riding in a motor vehicle may be properly charged with negligence if he encourages or permits the driver to proceed at an unreasonable speed without remonstrance. Thus, where one rode in an automobile at a rate of over fifty miles an hour in a city street for a distance of 1,500 feet, without remonstrance or even suggestion to the driver that he stop the car or slacken its speed, renders him guilty of contributory negligence, and he cannot recover for injuries sustained by the machine striking a bundle of newspapers in the street." The appellant also contends that this prayer is bad because it ignores the testimony of the defendant. But the prayer is based upon the plaintiff's version of the case, and leaves to the jury the finding of the facts necessary to constitute contributory negligence on the part of the plaintiff.

We see no serious objection to the seventh prayer. It submits to the finding of the jury the facts testified to by the defendant, and also the question whether the defendant did what any ordinary prudent man would have done under such circumstances.

Finding no reversible error in any of the rulings of the court below, the judgment will be affirmed.

*Judgment affirmed, with costs.*