# RICHARD EUGENE RICKETTS v. STATE OF MARYLAND

[No. 167, September Term, 1979.]

*Decided November 6, 1981.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*George E. Burns, Jr., Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. MURPHY, C. J., dissents and files a dissenting opinion at page 714 *infra.*

In this case we shall decide whether a prior conviction for indecent exposure was admissible to impeach the credibility of the defendant.

The facts may be stated briefly. Richard Eugene Ricketts was tried by a jury in the Circuit Court for Montgomery County on charges of second degree rape, second degree sexual offense, and burglary. When Ricketts took the witness stand to testify in his defense the trial judge, over the objection of defense counsel, allowed the prosecutor to question Ricketts regarding a three year old conviction for indecent exposure for the limited purpose of impeaching his credibility. Ricketts was convicted and appealed to the Court of Special Appeals which affirmed the conviction in an unreported *per curiam* opinion, No. 354, September Term, 1979, filed December 4, 1979. We granted certiorari to address the important question presented.

Before us Ricketts contends that Maryland law does not

permit cross-examination on prior convictions for any offenses other than infamous crimes and crimes of moral turpitude, or lesser crimes affecting the credibility of the witness. He argues that indecent exposure fits none of these categories and, therefore, it was error for the trial court to admit evidence of this prior conviction. The State argues that indecent exposure is a crime of moral turpitude which may be used to attack the defendant's veracity.

We begin our consideration of this issue by recognizing that in our system of criminal justice every defendant has the right to testify in his own defense. Equally fundamental to the system is the right of the State to cross-examine such defendant and impeach him, if it can, as to the truthfulness of his testimony. The evidentiary tool the State customarily uses to attack the defendant's credibility is evidence of his prior convictions. The only details ordinarily allowed to be presented to the jury are the nature of the charge and the fact of conviction. The purpose in admitting such evidence is to assist the factfinder in measuring the credibility of the defendant.

The danger in admitting prior convictions as evidence to impeach the defendant stems from the risk of prejudice. The jury may improperly infer that the defendant has a history of criminal activity and therefore is not entitled to a favorable verdict. Such evidence may detract from careful attention to the facts, despite instructions from the Court, influencing the jury to conclude that if the defendant is wrongfully found guilty no real harm is done. Where the crime for which the defendant is on trial is identical or similar to the crime for which he has been previously convicted the danger is greater, as the jury may conclude that because he did it *before* he most likely has done it *again.* The net effect of such evidence is often to discourage the defendant from taking the stand.

Thus, the role of the trial judge takes on added importance. It becomes his function to admit only those prior convictions which will assist the jury in assessing the credibility of the defendant. The trial judge must weigh the probative

value of the convictions against the prejudice to the defendant in asserting his defense. Obviously, not all prior convictions will survive this balancing process. The problem arises when the trial judge seeks to determine which crimes do prevail and are, therefore, admissible.

The jurisdictions vary in their legislative and judicial determinations of what crimes may be used to impeach. At one end of the spectrum are Hawaii and Montana which allow no cross-examination on the subject of impeachment by use of prior convictions. Hawaii reaches its result on constitutional grounds, *State v. Santiago,* 53 Haw. 254, 492 P.2d 657 (1971), Montana by legislative enactment. Rule 609, Mont. R. Evid. *See, State v. Camitsch,* 626 P.2d 1250 (Mont. 1981). West Virginia has a similar approach, it excludes evidence of prior crimes in every case except where the defendant has been convicted of perjury. *State v. McAboy,* 236 S.E.2d 431 (W. Va. 1977). Florida and Virginia allow the prosecutor to introduce the existence of prior convictions but not to reveal what crimes those convictions are for (with the exception that in Virginia the prosecutor is allowed to particularize if the conviction is for perjury). *Johnson v. State,* 380 So. 2d 1024 (Fla. 1979); *Harmon v. Commonwealth,* 212 Va. 442, 185 S.E.2d 48 (1971).

At the other end of the spectrum, Louisiana, Massachusetts, Missouri, and Oregon allow the prosecutor to introduce evidence of *any* prior conviction based on their construction of applicable statutes. *State v. Prather,* 290 So. 2d 840 (La. 1974); *Commonwealth v. West,* 357 Mass. 245, 258 N.E.2d 22 (1970); *Forbis v. Associated Wholesale Grocers, Inc.,* 513 S.W.2d 760, 88 A.L.R. 3d 62 (Mo. App. 1974) and *State v. Rush,* 248 Or. 568, 436 P.2d 266 (1968).

The States which remain are largely those which permit impeachment by proof of conviction of infamous crimes or crimes involving moral turpitude. *See generally,* 3A Wigmore, *Evidence,* § 980 (Chadbourn Rev. 1970), and those states which employ a weighing or balancing test, giving considerable deference to the trial court's discretion in determining which crimes may be used to impeach.

Among the states that employ this test two cases are frequently cited for guidance, *Luck v. United States,* 121 U.S. App. D.C. 151, 348 F.2d 763 (1965), and *Gordon v. United States,* 127 U.S. App. D.C. 343, 383 F.2d 936 (1967); *cert. denied,* 390 U.S. 1029, 88 S. Ct. 1421, 20 L. Ed. 2d 287 (1968). *See, e.g., Bogie v. Commonwealth,* 467 S.W.2d 767 (Ky. 1971); *Bustillos v. State,* 464 S.W.2d 118 (Tex. Cr. App. 1971). *Luck* proposed that the trial court should weigh the prejudicial effect of impeachment against the probative relevance of the prior conviction to the issue of credibility. 348 F.2d at 768. To assist the trial court in its determination *Luck* also recited four relevant factors to consider: "the nature of the prior crimes [footnote omitted], the length of the criminal record, the age and circumstances of the defendant, and, above all, the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." 348 F.2d at 769.

*Gordon* cited and approved the balancing test of *Luck,* then went on to explain its application:

> In common human experience acts of deceit, fraud, cheating, or stealing, for example, are universally regarded as conduct which reflects adversely on a man's honesty and integrity. Acts of violence on the other hand, which may result from a short temper, a combative nature, extreme provocation, or other causes, generally have little or no direct bearing on honesty and veracity. A "rule of thumb" thus should be that convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not; traffic violations, however serious, are in the same category. The nearness or remoteness of the prior conviction is also a factor of no small importance. Even one involving fraud or stealing, for example, if it occurred long before and has been followed by a legally blameless life, should generally be excluded on the ground of remoteness. [383 F.2d at 940 (footnote omitted)].

While this Court has not approved guidelines as broad as those announced in *Gordon* nor sanctioned a balancing test with all the factors outlined in *Luck,* it has set certain standards to be followed and has also recognized the importance of considering several factors in determining whether lesser crimes have any relevance or probative value impacting upon the defendant's credibility. A cursory examination of Maryland law will illustrate the point.

Maryland Code (1974, 1980 Repl. Vol.), § 10-905 of the Courts and Judicial Proceedings Article provides that "[e]vidence is admissible to prove . . . the fact of [a witness'] conviction of an infamous crime." This statute, in one form or another, has been in effect since 1864, Chapter 109, Acts of 1864, and has received the attention of this Court in various contexts.[1]

In 1884 this Court explained in *State v. Bixler,* 62 Md. 354, 360 (1884) that at common law "[a]n 'infamous crime' is such crime as involved moral turpitude, or such as rendered the offender incompetent as a witness in court, upon the theory that a person would not commit so heinous a crime unless he was so depraved as to be unworthy of credit." In *Garitee v. Bond,* 102 Md. 379, 383, 62 A.2d 631 (1905) we further elaborated:

> The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi,* which

---

1. *See, e.g.,* State v. Huston, 281 Md. 455, 379 A.2d 1027 (1977); Cousins v. State, 230 Md. 2, 185 A.2d 488 (1962); Taylor v. State, 226 Md. 561, 174 A.2d 573 (1961); Linkins v. State, 202 Md. 212, 96 A.2d 246 (1953); Burgess v. State, 161 Md. 162, 155 A. 153 (1931); Niemoth v. State, 160 Md. 544, 154 A. 66 (1931); Nelson v. Seiler, 154 Md. 63, 139 A. 564 (1927); Lavine v. Abramson, 142 Md. 222, 120 A. 523 (1923); Annarina v. Boland, 136 Md. 365, 111 A. 84 (1920); U. Rwys. & E. Co. v. Phillips, 129 Md. 328, 99 A. 355 (1916); Simond v. State, 127 Md. 29, 95 A. 1073 (1915); Balto. & Ohio R. Co. v. Strube, 111 Md. 119, 73 A. 697 (1909); Mattingly v. Montgomery, 106 Md. 461, 68 A. 205 (1907); Garitee v. Bond, 102 Md. 379, 62 A. 631 (1905); Deck v. Balto. & Ohio R. Co., 100 Md. 168, 59 A. 650 (1905); Bonaparte v. Thayer, 95 Md. 548, 52 A. 496 (1902); McLaughlin v. Mencke, 80 Md. 83, 30 A. 603 (1894); Smith v. State, 64 Md. 25, 20 A. 1026 (1885); State v. Bixler, 62 Md. 354 (1884).

impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice.

However, what offenses could properly be said to be crimes of moral turpitude were still undetermined. We recognized that the term was imprecise but acknowledged that it connoted conduct which was base or vile and contrary to the accepted and customary conduct between men. *Dental Examiners v. Lazzell,* 172 Md. 314, 320, 191 A. 240 (1937).

In *Cousins v. State,* 230 Md. 2, 185 A.2d 488 (1962) we recognized a broader base for the use of prior convictions to impeach. We said:

It has been held by this court that evidence of the accused's previous conviction of crime *need not be restricted to infamous crimes or those involving moral turpitude,* provided the violation of law may have some tendency to show that the person charged is not to be believed under oath. *Taylor v. State,* 226 Md. 561 [, 174 A.2d 573, (1961)]; *Linkins v. State,* 202 Md. 212 [, 96 A.2d 246 (1953). 230 Md. at 4 (emphasis supplied)].

Prior to *Cousins,* in *Nelson v. Seiler,* 154 Md. 63, 69, 139 A. 564 (1927), we held that every conviction does not affect a witness' credibility; and if it does not, evidence of such is irrelevant and should not be admitted. Most recently, in *State v. Huston,* 281 Md. 455, 460, 379 A.2d 1027 (1977), we repeated the words of Judge W. Mitchell Digges in *Burgess v. State,* 161 Md. 162, 155 A. 153 (1931) where he set forth the purpose, breadth, and limitation on admitting evidence of prior convictions.

The issue always is the truth of the witness' testimony. In other words, is the witness devoid of moral perception, such a person as would regard lightly the obligations of an oath to tell the truth? In judging of a man's moral fibre, his previous conduct, covering a reasonable time before the inquiry,

undoubtedly has a real and substantial bearing upon the question. It seems to us that there can be little argument that previous conduct of a witness can be shown to be such as, by the common experience of the average man, would justify a belief in his unworthiness as a witness. Certainly, if it be shown that a witness had previously been convicted of perjury, it would materially discredit, if not entirely destroy, the value of his testimony. Conviction of many other crimes could properly have the same effect; while, on the other hand, there may be convictions of violations of hundreds of police regulations, which in no real or true sense can be taken as tending to make one so convicted unworthy of belief.

Our cases then clearly point out that while infamous crimes, felonies, crimes involving moral turpitude, deceit, or dishonesty are not the only types of crimes which are admissible for purposes of impeachment, lesser crimes, to be admissible, must tend to show that the person charged is not to be believed under oath. In *Cousins v. State,* supra, 230 Md. at 4, we announced two factors to be considered in deciding the admissibility of lesser crimes: (1) "the length of time since it occurred considered with [(2)] the nature of the crime." We deem these factors relevant for consideration here.

Returning to the case *sub judice,* our precedents dictate that if indecent exposure is an infamous crime or a crime of moral turpitude, as the State contends, it was admissible for purposes of impeachment. However, if it is a lesser crime, then its admissibility must be determined under a different standard.

Classifying indecent exposure as infamous, a crime of moral turpitude or a lesser violation is no easy task. We are concerned, here, with a vague crime having its roots in the law of blasphemy and vagrancy. *See* 2 Stephen, *History of the Criminal Law of England* 470 (1883). Indecent exposure was first dealt with statutorily in Maryland when the General Assembly amended Article 27, "Crimes and Pun-

ishment", adding § 122, "Disturbance of the Public Peace." Acts of 1902, Ch. 281, § 67 A. The Act was amended in 1967 to include exposure "on or about any public place" as well as in other places previously mentioned. Acts of 1967, Ch. 520. Effective July 1, 1977, the legislature excised the words "or indecently exposing his person" from the disturbing the peace statute and added § 335A to Article 27. Acts of 1977, Ch. 384, §§ 1-2. Article 27, § 335A now reads: "Every person convicted of the common-law crime of indecent exposure is guilty of a misdemeanor and shall be punished by imprisonment for not more than three years or a fine of not more than $1,000, or both."

The common law crime of indecent exposure was described by this Court in *Messina v. State,* 212 Md. 602, 606, 130 A.2d 578 (1956):

> Indecent exposure, to amount to a crime, must have been done intentionally. Intent may be inferred from the conduct of the accused and the circumstances and environment of the occurrence. The essential intent is a general and not a specific intent. An exposure becomes indecent, and a crime, when [a] defendant exposes himself at such a time and place that, as a reasonable man, he knows or should know his act will be open to the observation of others. *State v. Martin* (Iowa), 101 N. W. 637; *Peyton v. District of Columbia,* 100 A.2d 36, 37.

By thus labeling indecent exposure a general intent crime, the types of offenses brought within its scope vary from the reprehensible to the arguably innocuous, from offenses indicative of a specific intent to offenses which can only be characterized as negligent. A review of a few cases on the subject will illustrate the point.

In *Messina v. State, supra,* the defendant was seated in a parked car and exposed himself to two thirteen year old girls who were walking by. The girls testified that, at the time, the defendant "was giving them a 'funny' look, a look that 'made us feel funny.'" 212 Md. at 604. The defendant was

found guilty and judged to have displayed the requisite intent.

In *State v. Sousa,* 2 Conn. Cir. 452, 201 A.2d 664 (1964), the court relied on *Messina* in upholding an indecent exposure conviction. There a man had been observed masturbating in front of a window in his home in the middle of the day. "Intent," ruled the court, "may be inferred from recklessness." 201 A.2d at 666.

*Davenport v. United States,* 56 A.2d 851 (D.C. 1948), upheld an indecent exposure conviction where the defendant was accused of urinating by a tree at night in view of a women's dormitory. There was no evidence that the defendant intended others to see him, though the Court noted the defendant made no attempt to hide himself. The Court apparently satisfied the intent inquiry by finding willfulness with regard to the exposure element and negligence with regard to the public element.

A clearer case of general intent inferred from negligence is *State v. Rocker,* 52 Haw. 336, 475 P.2d 684 (1970). There the court sustained the conviction of two nude sunbathers after police, acting upon an anonymous tip, used binoculars to spot them on an isolated beach. There was no showing that anyone, other than the police, had seen the sunbathers or had been offended.[2]

The point we stress is that an indecent exposure conviction, without more, says little about the conduct for which the person was convicted. Because the offense requires only a general intent, the gamut of offenses and circumstances that fall within the ambit of the crime are so widely varied that, while one person may indeed have shown a moral depravity sufficient to impact upon his credibility, another may have committed a very minor infraction indicative of nothing more than momentary poor judgment perhaps dictated by necessity. The intent required for the crime does not

---

2. The purpose in citing these out-of-state cases is simply to illustrate the various types of conduct that have been classified as indecent exposure. It is not intended to indicate our agreement or disagreement with the results reached.

require the accused to have performed a flagrant act damnable as an affront to decency and social norms but encompasses acts committed where the accused was unaware that his or her lack of apparel would be noticed.

It is this vagueness or uncertainty in the nature of the offense that makes it difficult to classify indecent exposure as infamous or something less. As we have noted, the crimes that are normally associated with the term "infamous because of their moral turpitude [are] treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi," Garitee v. Bond, supra,* 102 Md. at 383. They leave no doubt as to the type of conduct committed and condemned. The courts, legislature, and society have made the determination that such crimes, because they show such a lack of regard for societal norms and values, are relevant in assessing the credibility of one who has been convicted of those offenses. It is our view that the wide spectrum of conduct and degrees of depravity associated with indecent exposure make it clear that it does not conform with those offenses regarded as infamous. We, therefore, conclude that whatever else it may be, indecent exposure is not an infamous crime.

Moral turpitude, while being somewhat less specific than infamous crimes, still connotes such a disregard for social values on the part of the perpetrator, that one could reasonably infer that such a person's testimony is suspect. Additionally, we note that what constitutes a crime of moral turpitude may involve different considerations compelling different results in different circumstances. An excellent example of this is provided by the State's reliance in the instant case on *Dental Examiners v. Lazzell,* 172 Md. 314, 191 A. 240 (1937).

In *Lazzell* a dentist contested the revocation of his license to practice dentistry by the Board of Dental Examiners on the basis of three prior convictions of indecent exposure. The Board based its action on a statute allowing it to cancel the registration and certificate of a dentist upon a showing that he was convicted of a crime involving moral turpitude. The dentist alleged that indecent exposure was not a crime

of moral turpitude and that, therefore, the Board's action was illegal.

The *Lazzell* Court first noted that while moral turpitude may not be hard to define, characterizing offenses as involving moral turpitude was a different matter. After listing a compendium of cases where offenses were adjudged as involving moral turpitude the Court said that "[i]t has been decided that moral turpitude is not involved in a charge unless it is intentional or not innocent in its purpose, or not accidental [citations omitted]." 172 Md. at 322. The Court then found that the facts showed that the dentist's conduct had been public and intentional and that "it require[d] no discussion to argue or prove that the offense [indecent exposure] is so base, vile, and shameful as to leave the offender not wanting in depravity, which the words 'moral turpitude' imply." 172 Md. at 321.

The first and most fundamental distinction we note between *Lazzell* and the case at bar is that the Court in *Lazzell* was assessing the propriety of a licensing board's determinations whereas here we are concerned with the cross-examination of a defendant in a criminal trial. In *Lazzell* the question was whether a dentist had violated the ethical standards of his profession. In the case *sub judice* the question is whether the conviction was relevant to an assessment of the credibility of a criminal defendant. Therefore, the light under which the conviction is examined as well as the effect it would produce on the examiners is drastically different. A second basic difference is that the Board of Examiners in *Lazzell* was apprised of the circumstances attending *Lazzell's* convictions. In the instant case there is no such factual background. Because of these differences and because of the unique aspects of the criminal trial process, we decline to apply the holding of *Lazzell* to the instant circumstances. However, while *Lazzell* may not be a controlling precedent in our present inquiry, the case is instructive.

The *Lazzell* Court found that conduct must be "intentional" and "not accidental" to constitute moral turpitude. 172 Md. at 322. We agree. Accidental or negligent conduct

cannot be perceived as indicating the requisite depravity and baseness normally associated with the term moral turpitude. Since in a criminal proceeding the jury is not allowed to investigate into the circumstances of a conviction, merely referring to a prior indecent exposure conviction does not tell them how socially reprehensible the conduct is.

At this point, then, our conclusion is obvious. Indecent exposure is a general intent crime that includes within its scope an innumerable variety of offenses, including acts that are reckless or negligent. As such its meaning is entirely too unspecific to warrant the appellation of a crime of moral turpitude, at least in the context with which we are here concerned.

This leaves one possible category of offenses within which indecent exposure may yet fit, *i.e.,* the lesser violations which affect credibility. We need not pause long here as our previous discussion covers most of the relevant ground.

As we said before, *Cousins* mandates that we take at least two factors into consideration; length of time and nature of the offense. The length of time involved here is three years. We have held longer periods to be insufficient to vitiate the import of a particular crime and do not consider this length of time significant enough to be dispositive.

At the very heart of our determination of this matter, however, is the kinds of conduct which give rise to this offense. We believe that whether the crime sought to be used to impeach describes with sufficient specificity the conduct reflecting on the defendant's credibility is another factor to be weighed by the trial court. If the crime is so ill-defined that it causes the factfinder to speculate as to what conduct is impacting on the defendant's credibility, it should be excluded. Stated differently, since the issue is always the truth of the witness, where there is no way to determine whether a crime affects the defendant's testimony simply by the name of the crime that crime should be inadmissible for purposes of impeachment. It is clear to us that the introduction of a prior conviction for indecent exposure sheds no light on what it is the defendant has done and hence it is beyond

the ken of any factfinder to assess what, if any, impact such conviction has upon the defendant's veracity.

The argument arises that the defendant has the opportunity to explain the circumstances surrounding his prior conviction, allowing him to offset whatever prejudicial effect the conviction might have. This, however, is manifestly unfair and would amount to a retrial of the prior conviction before the present jury. The prejudice resulting from such a procedure clearly would outweigh whatever minute probative value the conviction had.

We hold, therefore, that, for purposes of impeachment, indecent exposure is not an infamous crime, a crime of moral turpitude, a felony, nor a crime involving dishonesty or deceit. Further, we hold, it is a lesser crime for which the proscribed conduct includes such a wide variety of behavior that the factfinder would be unable to make a reasoned judgment as to whether the offense affects the defendant's credibility; it is inadmissible for purposes of impeachment. Under the circumstances of the instant case, where the defendant was on trial for sex related offenses, the prejudicial effect of its admission, though impossible to gauge, could have been significant and, therefore, constitutes reversible error.

> *Judgment of the Court of Special Appeals reversed; case remanded to that court with instructions to reverse the judgment of the Circuit Court for Montgomery County and remand to that court for a new trial.*
> *Costs to be paid by the County.*

*Murphy, C. J., dissenting:*

The Court holds that a prior conviction for indecent exposure is per se inadmissible to impeach the credibility of a defendant testifying in his own behalf in a criminal case. It concludes that the offense is a general intent crime

encompassing "types of offenses [which] . . . vary from the reprehensible to the arguably innocuous, from offenses indicative of a specific intent to offenses which can only be characterized as negligent." The majority opines that "the intent required for the crime does not require the accused to have performed a flagrant act damnable as an affront to decency and social norms but encompasses acts committed where the accused was unaware that his or her lack of apparel would be noticed." The Court holds that a prior conviction for indecent exposure "sheds no light on what it is the defendant has done and hence it is beyond the ken of any factfinder to assess what, if any, impact such conviction has upon the defendant's veracity." According to the majority, for the purposes of impeachment, indecent exposure "is not an infamous crime, a crime of moral turpitude, a felony, nor a crime involving dishonesty or deceit," but instead "is a lesser crime for which the proscribed conduct includes such a wide variety of behavior that the factfinder would be unable to make a reasoned judgment as to whether the offense affects the defendant's credibility." In so holding, the majority disregards the settled law of Maryland and injects needless confusion into the law governing the admissibility of prior convictions to impeach credibility. I, therefore, respectfully dissent and give my reasons.

The record discloses that the trial judge, before admitting the prior indecent exposure conviction in evidence, inquired of the defendant's counsel, out of the presence of the jury, "what the nature of the indecent exposure was." Counsel responded by stating his recollection that the act "occurred at Congressional Plaza and [involved] exposing the penis outside of a business establishment." In admitting the prior conviction, the court instructed the jury that it was only to be considered as impeachment evidence with respect to the credibility of the defendant's testimony.

In *Messina v. State,* 212 Md. 602, 130 A.2d 578 (1957), the defendant was convicted of the common law offense of indecent exposure for having exposed his "private parts" to two young school girls on a public street. Quoting from *Hochheimer on Crimes and Criminal Procedure,* at 430 (2d.

ed. 1904), the Court noted that the offense consists of "exposure in public of the entire person, or of parts that should not be exhibited." In affirming the conviction, the Court said:

> "Indecent exposure, to amount to a crime, must have been done *intentionally*. Intent may be inferred from the conduct of the accused and the circumstances and environment of the occurrence. The essential intent is a general and not a specific intent. An exposure becomes indecent, and a crime, when defendant exposes himself at such a time and place that, as a reasonable man, he knows or should know his act will be open to the observation of others. [citations omitted)." *Id.* at 660 (emphasis supplied).

In *Dental Examiners v. Lazzell,* 172 Md. 314, 191 A. 240 (1937), the Court flatly held that the common law offense of indecent exposure was a crime involving moral turpitude. We said:

> "it requires no discussion to argue or prove that the offense is so base, vile, and shameful as to leave the offender not wanting in depravity, which the words 'moral turpitude' imply." *Id.* at 321.

In that case, the defendant's license to practice dentistry was revoked under a statute which authorized such a revocation upon conviction of a crime of moral turpitude. While the defendant had pled guilty to the offense, he argued at the revocation hearing that he had not committed the act of indecent exposure intentionally but only accidentally. The question squarely before the Court was whether the offense of indecent exposure involved moral turpitude. The Court defined moral turpitude as an act of baseness, vileness, or depravity in the private and social duties which one person owes to another, or to society in general, contrary to the accepted and customary rule of the law and duty between persons. 172 Md. at 321. The Court rejected Lazzell's claim that the exposure was accidental, indicating in effect that

had it been accidental, no conviction would have been warranted. The Court stated that the offense encompassed both "publicity and intention" and that "moral turpitude is not involved in a charge unless it is intentional or not innocent in its purpose, or not accidental." *Id.* at 322.

The definition of moral turpitude, set forth in *Lazzell,* continues to be a part of the law of Maryland. *See Atty. Griev. Comm'n v. Klauber,* 289 Md. 446, 423 A.2d 578 (1981); *Attorney Grievance Comm'n v. Walman,* 280 Md. 453, 374 A.2d 354 (1977); *Braverman v. Bar Assn. of Balto.,* 209 Md. 328, 121 A.2d 473 (1956). The question whether a crime involves moral turpitude under Maryland law does not depend, as the majority indicates, upon whether the offense is being used to impeach credibility in a criminal case or as evidence in a civil license revocation proceeding. The standard is, and can only be the same in all cases, *i.e.,* whether the crime in question involves moral turpitude. *Messina* and *Lazzel* together stand for the proposition that the offense of indecent exposure involves moral turpitude and is not committed unless there is a deliberate and intentional act of public exposure; an act which is merely negligent, reckless, accidental, or otherwise unintentional is not sufficient.

It is, of course, elementary that when a defendant in a criminal case elects to testify on his own behalf, he asks the jury to credit his testimony rather than the conflicting testimony of other witnesses. He presents himself before the jury as a person worthy of belief and thereby places in issue his credibility as a witness. Under Maryland Code (1981), § 10-905 of the Courts and Judicial Proceedings Article, evidence is always admissible for impeachment purposes, without regard to time, to establish that a witness was convicted of "an infamous crime." As the majority indicates, our cases hold that an infamous crime is a crime that involves moral turpitude and includes treason, felony, perjury, forgery and such other offenses as are classified generally as *crimen falsi. See Cousins v. State,* 230 Md. 2, 185 A.2d 488 (1962); *Garitee v. Bond,* 102 Md. 379, 62 A. 631 (1905); *State v. Bixler,* 62 Md. 354 (1884). It has long been the

law of this State that evidence of an accused's previous conviction of a crime need not be restricted to infamous crimes, or those involving moral turpitude, provided the violation may have some tendency to show that the witness is not to be believed under oath. *State v. Huston,* 281 Md. 455, 379 A.2d 1027 (1977); *Taylor v. State,* 226 Md. 561, 174 A.2d 573 (1961); *Burgess v. State,* 161 Md. 162, 155 A. 153 (1931); *Nelson v. Seiler,* 154 Md. 63, 139 A. 564 (1927). These cases indicate that as to those offenses which are not infamous or do not involve moral turpitude, the trial judge must exercise discretion as to the nature of the prior conviction but that his decision will not be reversed on appeal unless the prior conviction is so clearly irrelevant to impeach credibility that its admission constituted an abuse of discretion. Indeed, our cases demonstrate that we have been loath to reverse a criminal conviction on the ground that the trial judge abused his discretion in admitting a prior conviction to impeach the credibility of a witness or a defendant. For example, we have repeatedly held that a prior conviction for assault is not per se inadmissible as having no bearing on the credibility of a witness. *Taylor v. State, supra; Linkins v. State,* 202 Md. 212, 96 A.2d 246 (1953); *Burgess v. State, supra; Balto. & Ohio R. Co. v. Strube,* 111 Md. 119, 73 A. 697 (1909); *Burrell v. State,* 42 Md. App. 130, 399 A.2d 1354 (1979). *See also Hunter v. State,* 193 Md. 596, 69 A.2d 505 (1949) (prior conviction for operating a gambling table properly admitted in evidence).

I find inexplicable the majority's view that the crime of indecent exposure does not connote "such a disregard for social values on the part of the perpetrator, that one could reasonably infer that such a person's testimony is suspect." I think the intentional and deliberate public exposure of one's person is a deceitful act which reeks of moral taint; it is an act so infected with moral turpitude as would permit a rational person reasonably to conclude that one who would commit such a crime would be less likely to speak the truth than a person who had not committed such an offense.

The majority's holding that indecent exposure is a general

and not a specific intent crime does nothing to lessen the gravity of the offense or to dissipate the moral taint associated with it. There are, of course, two components of every crime — the *actus reus* (the guilty or criminal act) and the *mens rea* (the guilty mind or the mental state accompanying a forbidden act). The term "general intent" is frequently used to mean the general notion of *mens rea,* to encompass all forms of the mental state requirement, or to characterize an intent to commit an act on an undetermined occasion, while "specific intent" is used to characterize the mental state required for a particular crime, or to denote an intent to commit an act at a particular time and place. *See* W. LaFave and A. Scott, *Criminal Law,* at 201-02 (1972). *See also McBurney v. State,* 280 Md. 21, 371 A.2d 129 (1977), a case involving commingling and misuse of client funds by an attorney, where Judge Orth, for the Court, noted that a general *mens rea* or intent includes those consequences which (a) represent the very purpose for which an act is done, regardless of likelihood of occurrence, or (b) are known to be substantially certain to result, regardless of desire. A specific intent, on the other hand, is required when an element of the *mens rea* of a particular offense is some intent other than to do the *actus reus* specifically required for guilt. *Id.* at 29. The Court pointed out in *McBurney* that in general intent crimes, the essential intent is to do the *actus reus* and a requirement that the criminal act be done wilfully does not impose a specific intent as an essential ingredient of an offense. Surely, the Court in the present case does not mean to suggest that all general intent crimes are per se inadmissible to impeach credibility.

If indecent exposure is an infamous crime under § 10-905 of the Courts Article, it is admissible under the statute in all cases. Assuming, however, that the crime is not infamous, notwithstanding the fact that it involves moral turpitude under our cases, it is within the discretion of the trial judge to admit the prior conviction in evidence for impeachment purposes. Consistent with our prior cases, this Court must not disturb that discretion unless it is clearly abused. There

is no such abuse in this case, particularly since the decision of the trial judge to admit the prior conviction was fortified by knowledge of the details of the prior offense, and he instructed the jury that the offense could not be used other than to impeach credibility. I would affirm the conviction.